DECISION
{¶ 1} Plaintiff-appellant, David Kerwood, appeals from a January 2002 decision of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Cincinnati Insurance Company ("CIC"), in this action seeking damages pursuant to an uninsured/underinsured motorist clause in an automobile insurance contract.
 {¶ 2} On December 5, 1994, appellant was a passenger in a vehicle owned and driven by Tressa Thomas when Thomas drove left-of-center and hit an oncoming vehicle. Suffering head and other injuries, appellant does not remember anything about the accident. Neither Thomas nor the driver of the other vehicle were insured. Although Thomas was apparently at fault, and appellant's complaint states that he presented her with a personal injury claim, there is no evidence in the record that appellant ever sued her or otherwise attempted to recover damages from her for his injuries. Nor is there any evidence that appellant received any compensation from Thomas.
 {¶ 3} At the time of the accident, appellant's mother, with whom he resided, was employed by Big Bear Stores, Inc., which contracted with CIC to provide automobile coverage under a commercial policy. After the accident, appellant did not submit a claim to CIC or otherwise notify CIC of his injuries.
 {¶ 4} In 1999, the Ohio Supreme Court issued Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, in which the court interpreted a commercial insurance contract to extend coverage under its uninsured/underinsured motorist clause to an employee of the company, even when the vehicle involved in the accident was not a company-owned vehicle and even when the employee was not in the scope of his employment at the time of the accident. Scott-Pontzer was followed by Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999), 86 Ohio St.3d 557, in which the court interpreted a similar contract to extend coverage to the child of an employee of the company.
 {¶ 5} Consequently, appellant filed a claim with CIC which was denied. On March 8, 2001, appellant filed a complaint against CIC in the court below, asserting that he was entitled to coverage under the policy and seeking judgment in excess of $25,000 for his injuries.
 {¶ 6} CIC moved for summary judgment, which the trial court granted on the grounds that the evidence was uncontroverted that the auto was not a covered auto under the policy, and that appellant failed to give prompt notice to CIC of the accident and otherwise do all that was necessary to protect CIC's subrogation rights. The court based this conclusion on the fact that it had been seven-and-one-half years since the accident, and that appellant had failed to rebut the presumption of prejudice to CIC due to his inability to provide any meaningful information about the accident.
 {¶ 7} Appellant now assigns the following as error:
 {¶ 8} "The trial court erred to the prejudice of plaintiff-appellant in sustaining defendant-appellee's motion for summary judgment on the grounds that plaintiff-appellant was not entitled to UM/UIM coverage under the commercial automobile policy issued by Cincinnati Insurance Company."
 {¶ 9} Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. Once the moving party has met its responsibility of informing the trial court of the basis for the motion and identifying the portions of the record demonstrating the absence of a genuine issue of fact, the non-movant must produce competent evidence showing that there is a genuine issue for trial. Dresher v. Burt (1996),75 Ohio St.3d 280, 293.
 {¶ 10} In discussing whether Thomas' vehicle was a "covered auto" under the policy, the trial court stated:
 {¶ 11} "Plaintiff does not set forth any argument in opposition to Defendant's contention that he was not in a `covered auto'. Thus the evidence before the Court is undisputed that the uninsured motorist coverage applies to `autos you own' (Policy Business Auto Coverage Part Declarations). Assuming Plaintiff is an insured under the policy, it is uncontroverted that the auto was not a covered auto under the policy. There is no genuine issue of material fact that Plaintiff was not in a covered auto under the policy and summary judgment is appropriate on this ground."
 {¶ 12} Appellant argues that the trial court erred in its conclusion because the contract in question is nearly identical to the contracts in Scott-Pontzer and Ezawa. He urges that he qualifies as an insured under the policy, and is therefore entitled to uninsured motorist coverage, and also that the "covered autos" column of the policy extends coverage in the case of "any auto" and not merely where the auto is owned by the insured. We find no need to address this issue because, even if appellant qualified as an insured under the policy, he has not met all of the conditions precedent to establishing coverage.
 {¶ 13} It is well-settled that where an insured fails to comply with an express condition precedent to coverage requiring him to take necessary steps to secure the subrogation rights of the insurer, the contract has been materially breached, and the insured cannot recover. See Ruby v. Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159, 162.
 {¶ 14} In Ruby, the court distinguished and compared the ways in which the rights of the insurer may be jeopardized by the action (or inaction) of the insured. The court found that the "crucial precondition" of protecting the insurer's subrogation rights had not been met in that case for the reason that an 11-month delay, whether reasonable or not, prejudiced the insurer by depriving it of "any meaningful opportunity to investigate the accident and determine the relative fault of the parties involved," and because the deadline for filing claims against the tortfeasor's estate had passed, so that the insurer could not assert a claim against the estate. The court also pointed out that the insured had directly interfered with the insurer's subrogation rights by failing to assert a claim against the tortfeasor's estate, and by accepting in settlement a portion of the estate's assets.
 {¶ 15} Thus, an insurer's subrogation rights can be destroyed by a failure to give prompt notice, which, in turn, results in the expiration of the subrogation rights. More directly, the subrogation rights can be destroyed by settling with the tortfeasor or by failing to assert a claim against the tortfeasor prior to expiration of the statute of limitations.
 {¶ 16} The contract in question herein required appellant to give "prompt notice of the `accident' or `loss.' " Appellant argues that the contract's "prompt written notice" requirement only applies where settlement with a tortfeasor has occurred, and since there was no settlement he was not required to give prompt notice.
 {¶ 17} The trial court found, and we agree, that the contract did explicitly require appellant to give prompt written notice of the accident. Under "Section IV — Business Auto Conditions," the subsection entitled "Loss Conditions" states:
 {¶ 18} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 {¶ 19} "a. In the event of `accident,' claim, `suit' or `loss,' you must give us or our authorized representative prompt notice of the `accident' or `loss.'
 {¶ 20} "* * *
 {¶ 21} "3. LEGAL ACTION AGAINST US
 {¶ 22} "No one may bring a legal action against us under this Coverage Form until:
 {¶ 23} "a. There has been full compliance with all the terms of this Coverage Form * * *."
 {¶ 24} Based upon these terms, appellant cannot be said to have given "prompt notice" of the accident. It was not until after the release of the Ohio Supreme Court's decisions in Scott-Pontzer and Ezawa, some five years after appellant's accident, that appellant made CIC aware of his claim. This court's recent decision in Auto Owners Ins. Co. v. Allen (Dec. 27, 2001), Franklin App. No. 01AP-476, addressed whether an insured provided adequately prompt notice where five years had elapsed between the accident and the uninsured motorist claim. Following the reasoning in TIG Ins. Co. v. O.K. Freightways, Inc. (2000), Franklin App. No. 00AP-350, and in Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau (2000),88 Ohio St.3d 292, we held that five years was an unexcused significant delay which prejudiced the insurer by depriving it of "the opportunity to investigate the accident, assess liability, and pursue avenues of subrogation." Auto Owners, supra. This court and others have repeatedly held delays of less time than had elapsed in the case at bar to be unreasonable as a matter of law. See Heiney v. The Hartford, Franklin App. No. 01AP-1100, 2002-Ohio-3718 (two years); Fillhart v. W. Res. Mut. Ins. Co. (1996), 115 Ohio App.3d 200 (five years); Gidley v. Cincinnati Ins. Co. (Apr. 17, 2002), Summit App. No. 20813 (four years); and Cincinnati Ins. Co. v. McClain (Mar. 8, 2002), Greene App. No. 2001-CA-96 (five years).
 {¶ 25} Appellant appears to be arguing that the passage of time, standing alone, cannot be a basis for a finding that the insurer's subrogation rights have not been protected. According to appellant, some direct action by the insured, such as settling with the tortfeasor, must have occurred in order give rise to prejudice to the insurer, and that because he did not settle with the tortfeasor and, in fact, did nothing at all, no prejudice to CIC occurred. However, the failure to give prompt notice which constitutes an unexcused significant delay may be unreasonable as a matter of law, and, at the very least, raises a presumption of prejudice which must be rebutted by the insured in order to recover under the policy, See, e.g., TIG, Ormet, supra.[1]
 {¶ 26} Because appellant's delay in filing his claim resulted in a presumption of prejudice to CIC, the burden was on appellant to rebut this presumption with evidence that, despite the delay, CIC could still exercise its right of subrogation. CIC has pointed to numerous places in appellant's deposition illustrating the difficulty it would now face in attempting to piece together the events leading up to the accident, the names and locations of the parties involved, the type and extent of injuries suffered by appellant, and other information which could be useful in any subrogation action. Throughout questioning, appellant could only answer that due to his injuries he does not remember any of the details of the accident, or, indeed, much of the details about his life. Nevertheless, at the time of the accident other persons could have collected and maintained pertinent information about the accident and about appellant's injuries. If anyone did so, and appellant or his counsel possessed this information, no one presented this evidence to the trial court. The difficulty and even the impossibility of collecting information about an event which occurred in 1994 must be viewed as an insurmountable obstacle to the exercise of CIC's subrogation rights, and, in any event, the policy should not be interpreted as requiring CIC to go to such great lengths to protect its interests. Moreover, so much time has elapsed that the statute of limitations has now run on any cause of action against the tortfeasor, and appellant apparently took no steps to prosecute any legal action against the tortfeasor within the statutory period.
 {¶ 27} Appellant also argues he had no duty to notify CIC where there was no legal right to assert a claim at the time of the accident; it was only after Scott-Pontzer and Ezawa that his cause of action arose. However, "awaiting a favorable supreme court decision is not a reasonable excuse for a * * * delay in filing a claim." Gidley, supra, citing McClain, supra. Although any attempt to collect under the policy might have been in vain prior to 1999, "[n]othing prevented appellant from * * * promptly notifying appellee of the accident and preserving appellee's subrogation rights." Heiney, supra.
 {¶ 28} Appellant finally claims CIC's subrogation rights were illusory because the tortfeasor was uninsured, thus he should not be required to protect a right which CIC will not be able to exercise anyway. This argument as been soundly rejected by this court on several occasions. See, e.g., Alatsis v. Nationwide Ins. Ent., Franklin App. No. 01AP-1038, 2002-Ohio-2906; Love v. Nationwide Mut. Ins. Co. (1995),104 Ohio App.3d 804, discretionary appeal not allowed, 74 Ohio St.3d 1459. Whether CIC would have been able to obtain compensation from the tortfeasor is irrelevant: "The right of subrogation is a `full and present right in and of itself wholly independent' of any alleged lack of prejudice from the failure of an insured to protect the insurer's subrogation rights." Id., at 811, citing Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, 31.
 {¶ 29} By all of these factors, we perceive appellant to have failed to rebut the presumption of prejudice to CIC, and additionally failed to produce sufficient evidence demonstrating a genuine issue for trial. Viewing all the evidence most strongly in favor of appellant, the trial court properly concluded CIC was entitled to judgment as a matter of law.
 {¶ 30} Appellant's assignment of error is overruled and the decision of the Franklin County Court of Common Pleas granting summary judgment in favor of CIC is affirmed.
Judgment affirmed.
KLATT, J., concurs.
BRYANT, J., concurs separately.
[1] As a result, this case is factually dissimilar from Ferrando v. Auto-Owners Mut. Ins. Co. (Aug. 24, 2001), Ashtabula App. No. 2000-A-0038, appeal allowed (2002), 94 Ohio St.3d 1451; and this court's decision in Withem v. Cincinnati Ins. Co., Franklin App. No. 01AP-1286, 2002-Ohio-3067, discretionary appeal allowed, sua sponte, cause held for decision in Ferrando (11/20/2002 Case Announcements), 2002-Ohio-6248, both cases in which the insured was found to have breached the contract by settling with the tortfeasor.