OPINION
{¶ 1} The underlying facts giving rise to this appeal stem from an automobile collision which occurred in July 1995, resulting in serious personal injuries to the plaintiff, Nancy Pack. Given the serious injuries sustained by Ms. Pack and the admitted negligence of the tortfeasor, negotiations with the tortfeasor's insurance carrier were resolved relatively quickly with no need for litigation.[1] Less than one year after the accident, in April 1996, Pack released all claims against the tortfeasor in exchange for a settlement of $100,000, the limits of the tortfeasor's insurance policy.
 {¶ 2} At the time of the 1995 accident, Ms. Pack was employed by Carriage Court Retirement Center. Its corporate owner, Carriage Court Company, Inc., had contracted with Monroe Guaranty Insurance Company ("Monroe Guaranty") for two policies of coverage-commercial automobile insurance and commercial general liability insurance coverage — which were in full force and effect at all relevant times. Several years after the accident, Pack unsuccessfully attempted to obtain additional benefits from Monroe Guaranty under the underinsured motorist ("UIM") provisions of both policies. The complaint filed in this action avers that, at the time of filing, Pack's medical bills alone were in excess of $50,000 and some of the more serious injuries caused permanent harm with concomitant health and economic consequences.
 {¶ 3} On March 8, 2001, Ms. Pack filed a complaint in the Franklin County Court of Common Pleas against Monroe Guaranty claiming, inter alia, entitlement to benefits under the UIM provisions of the aforementioned policies. An answer filed on behalf of Monroe Guaranty set forth various defenses and denials and sought dismissal of Pack's complaint.
 {¶ 4} Discovery proceedings revealed additional uncontested facts. Monroe Guaranty received no notice of Ms. Pack's potential UIM claim until more than five years had elapsed since her accident and subsequent settlement with the tortfeasor's insurance carrier. The statute of limitations period for commencing a negligence action such as was available to Pack against the tortfeasor had expired years before Monroe Guaranty was on notice of the accident and resulting settlement. The insurance policies at issue contained specific provisions requiring, inter alia, an insured to provide prompt notice to Monroe Guaranty of a potential claim and/or settlement of a claim. Given the lack of notice, Monroe Guaranty was unable to participate in the initial process, particularly potential subrogation.
 {¶ 5} The parties eventually filed cross-motions and memoranda seeking summary judgment. The trial court rendered summary judgment in favor of Monroe Guaranty pursuant to a decision rendered May 6, 2002, and subsequently journalized June 7, 2002.
 {¶ 6} Nancy Pack ("appellant") has timely appealed, assigning a single error for our consideration:
 {¶ 7} "The Trial Court Erred To The Prejudice Of Plaintiff-appellant In Overruling Plaintiff-appellant's Motion For Summary Judgment And In Sustaining Defendant-appellee's Motion For Summary Judgment On The Grounds That Plaintiff-appellant's Prior Settlement With The Tortfeasor Destroyed The Purported Subrogation Rights Of Defendant-appellee, Thereby Discharging Defendant-appellant From Any Obligation To Provide Underinsured Motorist Coverage."
 {¶ 8} Preliminarily, we set forth the well-established standard by which we are bound in reviewing Civ.R. 56 summary judgments. In considering a motion for summary judgment, the evidence must be construed in favor of the nonmoving party. Summary judgment should be granted only if no genuine issue of fact exists; the moving party is entitled to judgment as a matter of law; and reasonable minds can come to but one conclusion, which conclusion is adverse to the nonmoving party. State ex rel. Grady v. State Emp., Relations Bd. (1997), 78 Ohio St.3d 181. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A motion for summary judgment first compels the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. If the moving party satisfies that burden, the nonmoving party must then produce evidence as to any issue for which that party bears the burden of production at trial. Dresher v. Burt (1996), 75 Ohio St.3d 280; Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108. Finally, it is well-established that an appellate court reviews summary judgments de novo; we review such judgments independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38.
 {¶ 9} The trial court's decision first addressed case law promulgated by the Supreme Court of Ohio upon which appellant first relies in her claim for UIM coverage, including Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660. Appellant contended, as she does before us, that Scott-Pontzer and its progeny establish that she is an "insured" under both policies at issue here and is entitled to UIM coverage as a matter of law.
 {¶ 10} For the limited purpose of determining whether appellant qualifies as an "insured" here, we turn first to the Supreme Court of Ohio's decision in Scott-Pontzer, in which the court followed a fundamental principle in the application of contract law interpreting ambiguous terms and language against the drafter of the contract and, in this case, strictly in favor of the "insured." In particular, the court examined the definitional provision of an insurance contract which defined "an insured" as: "1. You; 2. If you are an individual, any family member." The court found that this definition of the insured as "you" created ambiguity; since a corporation can act only through real persons, one reasonable interpretation of "you" includes the corporation's employees. Accordingly, the corporate employee was found to be an insured as a result of the ambiguous definition.
 {¶ 11} In this case, at the outset of the summary judgment proceedings, Monroe Guaranty initially countered with a twofold argument. First, it argued that appellant is not entitled to coverage because she is not an "insured" within the meaning of the UIM provisions and/or Scott-Pontzer. Moreover, assuming appellant were to be deemed an insured, she materially breached the terms of the UIM policies for failing to comply with the prompt-notice and consent-to-settle provisions set forth in those policies, thereby precluding Monroe Guaranty from protecting its potential subrogation interests. Consequently, Monroe Guaranty urged a finding that it was prejudiced as a matter of law and, thus, entitled to summary judgment.
 {¶ 12} The first issue addressed by the trial court was whether appellant is indeed an "insured" under either or both insurance policies. As noted by the court below, the UIM and other relevant policy provisions at issue in this case are essentially the same as those examined in Scott-Pontzer and, accordingly, appellant is an "insured." On appeal, Monroe Guaranty apparently, and prudently, does not take issue with the trial court's initial determination that appellant is an insured. (See, e.g., brief of Monroe Guaranty at 2.)
 {¶ 13} In ultimately granting Monroe Guaranty's summary judgment motion, the trial court agreed with the insurer's argument that appellant's UIM claim was defeated — as a matter of law — by her failure to comply with the notice and subrogation provisions. The trial court, following recent case law from this court and other jurisdictions, reasoned as follows:
 {¶ 14} "Notice provisions serve several important purposes in insurance contracts. Ormet Primary Aluminum Corp. v. Employers Ins. of Wassau (2000), 88 Ohio St.3d 292. Notice provisions provide the insurer an opportunity to investigate the accident and determine if the claim is covered by the policy. Id. Notice provisions also allow the insurer to `control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims.' Id. 'Unreasonable delay in giving notice may be presumed prejudicial to the insurer absent evidence to the contrary.' Ruby v. Midwestern Indemnity Co. (1988), 40 Ohio St.3d 159. As is the case with the Business Auto Policy [Monroe Guaranty's], right of subrogation found in the [commercial general liability policy] has been destroyed.
 {¶ 15} "* * * Here the liability coverage is conditioned upon compliance with notice and subrogation provisions that are not ambiguous. Failure to comply with those requirements precludes recovery coverage even though coverage arises by operation of law. [Appellant] settled her claim against the tortfeasor and released the tortfeasor from future liability, thereby extinguishing any subrogation rights that [Monroe Guaranty] may have had. * * *" (Trial Court Decision at 7-8.)
 {¶ 16} On December 27, 2002, just weeks prior to the oral argument in the instant case, the Supreme Court of Ohio rendered an opinion which both effectively modifies and/or overrules recent appellate court case law and is dispositive of this appeal.[2] In Ferrando v. Auto-Owners Mut. Ins. Co. (2002), 98 Ohio St.3d 186, the court posited precisely the issue at hand: "* * * whether a provider of * * * `UIM' coverage may be released from its obligation to provide coverage due to the failure of a claimant to notify the insurer of a potential claim prior to settlement with and full release of the tortfeasor who caused the injury giving rise to the potential claim." Id. at ¶ 1.
 {¶ 17} In Ferrando, as in the instant case, the insurance policies required that the insurer be given prompt notice of a potential UIM claim and required the consent of the insurer prior to settlement. Analyzing all "subrogation-related" provisions (i.e. prompt-notice and consent-to-settle clauses) in the same manner, the Ferrando court held:
 {¶ 18} "* * * [W]e determine that the insurer is released from the obligation to provide UIM coverage when the insurer is prejudiced by the lack of reasonable notice or by the insured's failure to obtain consent to settle prior to the insured's settlement with and release of the tortfeasor." Id. (Emphasis added.)
 {¶ 19} Thus, the inquiry logically proceeds to the issue of prejudice and upon whom the burden of demonstrating its existence or nonexistence falls.
 {¶ 20} In ultimately deciding that a rebuttable presumption should arise under such circumstances, the Ferrando court concluded:
 {¶ 21} "* * * [T]he burden of presenting evidence to show a lack of prejudice should be on the insured, who has failed to comply with the terms of the policy. An additional reason for applying a presumption of prejudice with the burden of presenting evidence on the insured is that the General Assembly has specifically allowed a right of subrogation to providers of UIM coverage. * * * However, simply because the General Assembly has allowed subrogation does not prevent courts from inquiring into insurer prejudice when a subrogation-related clause is not strictly complied with. If the insurer has suffered no prejudice from the insured's technical breach, it is difficult to justify permitting the insurer to deny coverage." Id. at ¶ 87. (Emphasis added.)
 {¶ 22} The court below neither required any demonstration of actual prejudice nor allowed appellant the opportunity to rebut the presumption of prejudice. Pursuant to the recent guidance of Ferrando, the trial court erred in granting summary judgment to Monroe Guaranty without an "inquiry into insurer prejudice." Id. at ¶ 87.
 {¶ 23} The assignment of error is sustained.
 {¶ 24} This cause is reversed and remanded to the trial court to conduct further proceedings for an appropriate determination of the existence or nonexistence of prejudice.
Judgment reversed and cause remanded.
DESHLER and BROWN, JJ., concur.
[1] The record reveals that criminal charges were brought against the tortfeasor, one David Gordon, including, inter alia, operating a motor vehicle while under the influence of alcohol and/or drugs.
[2] Counsel for both parties essentially concurred at oral argument that the case law upon which they relied both in the summary judgment proceedings and in briefing the instant case is, in all pertinent respects, superseded by this recent precedent.