DECISION AND JUDGMENT ENTRY
{¶ 1} In April 1994, Mari Thacker died as a result of an automobile accident caused by an underinsured motorist. In exchange for a complete release of liability, her estate settled with the tortfeasor and his insurance company for policy limits in November of 1995. In February 2001, after the Supreme Court of Ohio decided Scott-Pontzer v. LibertyMut. Fire Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116 andEzawa v. Yasuda Fire Marine Ins. Co. of Am., 86 Ohio St.3d 557,1999-Ohio-124, 715 N.E.2d 1142, the estate notified Central Mutual Insurance Company of a claim for underinsured motorists coverage under a policy issued to Dallas Automotive Group/Dallas Chevrolet. Dallas Chevrolet employed Ms. Thacker's father, Mr. James Thacker, with whom she lived at the time of the accident. After the insurer denied coverage and the estate filed a declaratory judgment action, the trial court granted summary judgment to the insurer.
 {¶ 2} The estate appeals the trial court's decision granting summary judgment to Central Mutual. The estate contends the trial court erred when it concluded that Central Mutual's uninsured/underinsured motorists policy only provides coverage for accidents involving automobiles owned by Dallas Chevrolet. Because we conclude that the "owned `autos' only" provision conflicts with the 1994 version of R.C.3937.18, the provision is unenforceable. The estate also argues that the notice and subrogation provisions of the insurance policy are excused because Central Mutual did not suffer prejudice. In light of the Ohio Supreme Court's recent holding in Ferrando v. Auto-Owners Mut. Ins. Co.,98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, we conclude that the trial court erred in finding that the notice and subrogation provisions precluded coverage without first determining whether Central Mutual suffered prejudice.
 {¶ 3} The estate raises three assignments of error for our review: "ASSIGNMENT OF ERROR NO. 1 — The trial court erred in granting Central Mutual's motion for summary judgment, finding that no coverage was available under the Central Mutual policy due to a breach of the policy's notice provision. ASSIGNMENT OF ERROR NO. 2 — The trial court erred in granting Central Mutual's motion for summary judgment, finding that no coverage was available under the Central Mutual policy due to a breach of the policy's subrogation and consent to settle provisions. ASSIGNMENT OF ERROR NO. 3 — The trial court erred in granting Central Mutual's motion for summary judgment, finding that the Central Mutual policy provides uninsured and underinsured motorist coverage only with respect to automobile accidents involving `covered autos'."
 {¶ 4} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination.Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8, 536 N.E.2d 411. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Bostic v.Connor (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, citing Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46; cf., also, State ex rel. Coulverson v. Ohio Adult Parole Auth. (1991),62 Ohio St.3d 12, 14, 577 N.E.2d 352; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, "the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Kulch v. Structural Fibers, Inc., 78 Ohio St.3d 134, 145,1997-Ohio-219, 677 N.E.2d 308, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 295, 662 N.E.2d 264.
 {¶ 5} For the sake of clarity, we will address the estate's third assignment of error first. The estate argues that the provision restricting coverage to autos owned by Dallas Chevrolet conflicts with the uninsured/underinsured motorists section of the policy. They contend that under the definitional section of the uninsured/underinsured section, the insured and his or her family members need not be in an owned auto to receive coverage. They also point out that the policy contains an "other owned auto" exclusion, which would be meaningless if the uninsured/underinsured motorists section only covered accidents involving autos owned by Dallas Chevrolet. We agree that the "owned `autos' only" provision of Central Mutual's policy is unenforceable, although for a different reason that that advanced by the estate.
 {¶ 6} Central Mutual's garage coverage form reads: "SECTION I— COVERED AUTOS ITEM TWO of the Declarations or Change Endorsement shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos." The symbols entered next to a coverage on the Declarations or Change Endorsement designate the only "autos" that are covered "autos."[1] In Dallas Chevrolet's policy, the number "22" is used to describe what autos are covered for purposes of uninsured/underinsured motorists coverage. The section defining the numerical symbols states that the number "22" describes "OWNED `AUTOS' ONLY. Only those `autos' you own * * *." Therefore, according to the policy, the uninsured/underinsured motorists section of Dallas Chevrolet's policy only applies to autos owned by the company. We note that the accident in which Ms. Thacker died did not involve an auto owned by Dallas Chevrolet. At the time of the accident, Ms. Thacker was a passenger in an automobile owned and operated by her boyfriend, Emmitt Smith.
 {¶ 7} An insurance policy is a contract between the insurer and the insured. Ohio Farmers Ins. Co. v. Cochran (1922), 104 Ohio St. 427,135 N.E. 537, paragraph one of the syllabus. For purposes of determining the scope of coverage of an uninsured/underinsured motorists claim, the statutory law in effect at the time of entering into the contract for automobile liability insurance, or renewal of the contract, controls the rights and duties of the contracting parties. Ross v. Farmers Ins.Group, 82 Ohio St.3d 281, 287, 1998-Ohio-381, 695 N.E.2d 732. Dallas Chevrolet's contract for insurance was renewed on February 1, 1994. Thus, in order for Central Mutual's "owned `autos' only" provision to be a valid restriction on uninsured/underinsured motorists coverage, the provision must conform to R.C. 3937.18 as it existed in 1994. See StateFarm Auto. Ins. Co. v. Alexander (1992), 62 Ohio St.3d 397, 399,583 N.E.2d 309; Martin v. Midwestern Group Ins. Co., 70 Ohio St.3d 478,1994-Ohio-407, 639 N.E.2d 438, paragraph two of the syllabus.
 {¶ 8} R.C. 3937.18(A) required insurers to offer uninsured and underinsured motorist coverage as follows: "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to * * * liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under * * * policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident.
* * * " Unlike the current version of R.C. 3937.18, the 1994 version did not contain a specific subsection allowing for exclusions to uninsured/underinsured motorists coverage. See R.C. 3937.18(I)(1)-(5).
 {¶ 9} In Alexander, 62 Ohio St.3d at 400, the Supreme Court of Ohio found that the purpose of R.C. 3937.18 was to protect insureds who had a legal claim against a tortfeasor but would otherwise go uncompensated due to the tortfeasor's lack of liability coverage. The insured in Alexander was injured while a passenger in his own vehicle. The insured sought underinsured motorist coverage from his insurer but the insurer denied coverage because the definition of underinsured motor vehicle excluded vehicles insured under the liability portion of the policy. The Alexander Court found that this exclusion conflicted with R.C. 3937.18. Id. at 400. In paragraph one of the syllabus, the court stated: "An automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from causes of action that are recognized by Ohio tort law."
 {¶ 10} Relying on Alexander, the Supreme Court of Ohio invalidated the "other owned auto" exception in Martin, 70 Ohio St.3d at 481. InMartin, an uninsured motorist struck the insured's motorcycle, injuring the insured. When the insured sought uninsured motorist coverage, his insurer denied coverage under the "other owned auto" exclusion, which precluded coverage for bodily injury suffered while operating a vehicle owned by the insured but not listed in the policy. The Martin Court found that R.C. 3937.18 did not permit exclusions requiring the insured to be injured while occupying a vehicle listed in the policy. Id. at 482. InMartin, the Supreme Court of Ohio held that R.C. 3937.18 was designed to protect people, not vehicles. Id. at paragraph one of the syllabus.
 {¶ 11} Based on Alexander and Martin, we conclude that the 1994 version of R.C. 3937.18 does not permit Central Mutual's "owned `autos' only" provision. With this provision, Central Mutual is attempting to restrict uninsured/underinsured motorists coverage to accidents that involve vehicles owned by Dallas Chevrolet. However, R.C. 3937.18 is not designed to protect vehicles; it is designed to protect people. SeeMartin, supra. We find this provision analogous to the "other owned auto" exclusion invalidated by Martin. Both provisions limit uninsured/underinsured motorists coverage based upon the type of auto involved in the accident that injured the insured. Such restrictions do not conform to the 1994 version of R.C. 3937.18. Under Alexander, R.C.3937.18 mandates uninsured/underinsured motorist coverage where "(1) the claimant is an insured under a policy which provides uninsured motorist coverage; (2) the claimant was injured by an uninsured motorist; and (3) the claim is recognized by Ohio tort law. Martin, supra. The estate has satisfied these requirements: (1) under Scott-Pontzer, Ms. Thacker is an insured under the policy; (2) Ms. Thacker was killed by an underinsured motorist; and (3) the estate had a claim recognized by Ohio tort law. Because Central Mutual's "owned `autos' only" provision eliminates coverage to persons with recognized tort claims, it conflicts with R.C.3937.18 as it existed in 1994. See Alexander, supra. Thus, Central Mutual's "owned `autos' only" provision is unenforceable. Accordingly, the estate's third assignment of error is upheld.
 {¶ 12} In its first assignment of error, the estate contends the trial court erred in concluding that coverage was precluded because the estate breached the prompt notice provision of the insurance policy. The estate argues that it gave reasonable notice considering the circumstances. According to the estate, it was excused from giving notice prior to Scott-Pontzer because existing law did not appear to allow such a claim. As for the delay in giving notice subsequent to the Scott-Pontzer
decision, the estate argues that the delay was reasonable. The estate argues that even if its notice was unreasonable, Central Mutual suffered no prejudice from the delay.
 {¶ 13} The policy issued to Dallas Chevrolet contains the following conditions: "I. SECTION V — GARAGE CONDITIONS 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT, OR LOSS a. In the event of "accident," claim, "suit" or "loss," you must give us or our authorized representative prompt notice of the accident or "loss." Include: 1) How, when and where the "accident" or "loss" occurred; 2) The "insured's" name and address; and 3) To the extent possible, the names and addresses of any injured persons and witnesses. II. OHIO UNINSURED MOTORIST COVERAGE(ENDORSEMENT) E. CHANGES IN CONDITIONS 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT, OR LOSS is changed by adding the following: a. Promptly notify the police if a hit-and-run driver is involved, and b. Promptly send us copies of the legal papers if a "suit" is brought. c. A person seeking Uninsured Motorists Coverage must promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle" and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner, or operator of such vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle."
 {¶ 14} The accident in which Ms. Thacker died occurred on April 25, 1994. In February 2001, almost seven years after the accident, the estate notified Central Mutual of its underinsured motorist claim. The trial court granted summary judgment to Central Mutual based on the estate's breach of the prompt notice provision. In its order, the trial court stated: "Additionally, the Court finds that even if Plaintiff is excused because Scott-Pontzer was not decided until 1999, the Plaintiff still waited 591 days following the Scott-Pontzer decision to provide notice to the Defendant. Under the circumstances of this case where the accident occurred seven years prior to notice and the ruling upon which Plaintiff relies occurred 591 days before the notice, the Court finds that the length of time until the date of the notice was unreasonable and did not comply with the policy of insurance offered by the Defendant."
 {¶ 15} Insurance contracts requiring "`prompt' notice" to the insurer have been held to require "notice within a reasonable time in light of all the surrounding facts and circumstances." Ruby v. MidwesternIndemn. Co. (1988), 40 Ohio St.3d 159, 532 N.E.2d 730, syllabus. "Unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary." Id. at 161. Thus, "prompt notice" issues have included a prejudice component when the insured has failed to notify the insurer within a reasonable amount of time.
 {¶ 16} Despite the language of Ruby and the estate's claim that Central Mutual did not suffer prejudice from the estate's lack of prompt notice, the trial court's order contains no conclusion regarding whether Central Mutual suffered prejudice as a result of the delay. Rather the trial court found that unreasonable delay alone precluded coverage under the insurance policy.
 {¶ 17} While this case was awaiting our decision, the Supreme Court of Ohio released Ferrando v. Auto-Owners Mut. Ins. Co.,98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927. In Ferrando, the Court clarified Ruby's prejudice component by adopting a two-part test to be applied in late notice cases involving underinsured motorist coverage. First, the trial court must determine whether the prompt notice provision was breached. Id. at ¶ 89. To do so, the court must determine whether the insurer received notice "within a reasonable time in light of all the surrounding facts and circumstances." Id. at ¶ 90, citingRuby, supra. If the insurer received notice in a reasonable time, the prompt notice provision has not been breached and the analysis is at an end. Id. If, however, the court determines that the insurer did not receive reasonable notice, the court must then look at whether the insurer suffered prejudice due to the lack of prompt notice. Id.
Unreasonable notice is presumed to be prejudicial to the insurer and the claimant bears the burden of presenting evidence to rebut that presumption. Id.
 {¶ 18} The trial court engaged in the first prong of this test, finding that Central Mutual did not receive reasonable notice. However, the trial court failed to consider whether Central Mutual suffered prejudice as a result of the estate's unreasonable delay in giving notice. Accordingly, the estate's first assignment of error has merit.
 {¶ 19} In its second assignment of error, the estate contends the trial court erred in concluding that coverage was precluded due to the estate's breach of the subrogation and consent-to-settle provisions of the insurance policy. The estate acknowledges that it did not notify Central Mutual prior to the settlement with the tortfeasor in November of 1995. However, the estate argues that Central Mutual suffered no prejudice from the estate's failure to comply with the subrogation clauses. The estate relies on the deposition of Central Mutual's representative, Douglas Watson. Mr. Watson testified regarding the criteria Central Mutual used when determining whether to exercise its subrogation rights. The estate points out that the tortfeasor did not meet Central Mutual's criteria for exercising its subrogation rights.
 {¶ 20} Central Mutual's policy provides:
"I. SECTION V — GARAGE CONDITIONS
The following conditions apply in addition to the Common Policy conditions:
A. LOSS CONDITIONS
5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.
II. OHIO UINSURED MOTORISTS COVERAGE (ENDORSEMENT) C. EXCLUSIONS This insurance does not apply to:
1. Any claim settled without our consent. However this exclusion does not apply to a settlement made with the insurer of a vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle."
F. ADDITIONAL DEFINITIONS 3. "Uninsured motor vehicle" means a land motor vehicle or trailer: b. Which is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amount required by the applicable law where a covered "auto" is principally garaged but that sum is either: 1) Less than the Limit of Insurance for Underinsured Motorists coverage under this Coverage Form or policy; or 2) Reduced by payments to others injured in the "accident" to less than the Limit of Insurance for Underinsured Motorists Coverage under this Coverage Form or policy."
 {¶ 21} Until recently, the Supreme Court of Ohio's decision inBogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22,521 N.E.2d 447, controlled this issue. Under Bogan, a claimant's compliance with the subrogation clause was a precondition to recovery under the insurance policy regardless of whether the insurer was prejudiced by noncompliance. Id. at 31. According to Bogan, "a right of subrogation, the protection of which is a precondition to underinsured motorist coverage, is a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor." Id. Thus, underBogan, settlement without an opportunity for the insurer to exercise its subrogation rights was a per se bar to coverage under the policy. The analysis contained no prejudice component.
 {¶ 22} However, this changed with the Supreme Court of Ohio's decision in Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217, 781 N.E.2d 927. In Ferrando, the Supreme Court of Ohio overruled, in part, paragraph four of the syllabus of Bogan, which held that a subrogation clause was a "valid and enforceable precondition to the duty to provide underinsured motorist coverage." The Ferrando Court rejected the view that a consent-to-settle clause is "an absolute precondition to recovery that is materially breached whenever it is not complied with." Ferrando at ¶ 88.
 {¶ 23} In Ferrrando, the Supreme Court of Ohio established a two-step test for dealing with alleged breaches of subrogation clauses in underinsured motorists policies. First, the court must determine whether the claimant actually breached the subrogation provision. Id. at ¶ 91. If the court determines that the claimant did not breach the subrogation provision, the analysis goes no further and underinsured motorists coverage must be provided. Id. Coverage must also be provided if the court determines that the insurer failed to respond to the claimant's request for consent to settle in a reasonable time or the insurer unjustifiably withheld consent. Id., citing McDonald v.Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27, 543 N.E.2d 456, paragraphs two and three of the syllabus and Fulmer v. Insura Prop. Cas. Co., 94 Ohio St.3d 85, 2002-Ohio-64, 760 N.E.2d 392, paragraph one of the syllabus. In those instances, the claimant's purported breach of the subrogation provision will not preclude recovery and the provision will be disregarded. Id. However, if the court determines that the claimant breached the subrogation provision and the insurer neither failed to respond in a reasonable time nor unjustifiably withheld consent, the court must determine whether the insurer suffered prejudice as a result of the claimant's breach. Id. Prejudice to the insurer is presumed, but the claimant may present evidence rebutting that presumption. Id.
 {¶ 24} The estate admits that it breached the subrogation clauses of Central Mutual's policy. Pursuant to Bogan, the court concluded that the estate's breach of the subrogation provision precluded coverage under the insurance policy. Because Bogan did not require the court to consider whether the insurer suffered prejudice, the court's order contains no such consideration. We realize that the trial court did not have the benefit of the Supreme Court of Ohio's decision in Ferrando, supra, when it decided the present case. However, in light of Ferrando, we find it necessary to remand this cause for a consideration of whether Central Mutual suffered prejudice as a result of the estate's breach. Accordingly, the estate's second assignment of error is upheld.
JUDGMENT REVERSED AND CAUSE REMANDED.
Abele, J., Concurs in Judgment and Opinion with Opinion:
 {¶ 25} Intermediate appellate courts are obligated to follow Ohio Supreme Court decisions. For this reason and this reason alone, I reluctantly agree with the principal opinion's reversal of the trial court's judgment.
 {¶ 26} Interestingly, I note that a vast majority of the other jurisdictions that have considered the issue raised in Scott-Ponzer v.Liberty Mutual Fire Ins. Co. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116
have apparently reached a conclusion opposite to the conclusion drawn by the Ohio Supreme Court. See Foote v. Royal Ins. Co. of America (1998),88 Haw. 122, 124-125, 962 P.2d 1004, 1006-1007 and the cases cited therein. Moreover, as Justice Stratton states in her dissenting opinion in Scott-Ponzer, it is inherent that a commercial insurance policy, purchased by a corporation and written for a corporation applies to the corporate entity and those acting within the scope of employment for that entity. In other words, a commercial policy should not be construed to provide uninsured or underinsured motorist coverage in a situation that involves personal, non-employment related activities of an employee (or a member of the employee's family) driving a private vehicle. Nevertheless, the Scott-Ponzer decision must be followed unless and until the Ohio Supreme Court decides to revisit this issue.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J.: Concurs in Judgment and Opinion.
Abele, J.: Concurs in Judgment and Opinion with Concurring Opinion.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commences from thedate of filing with the clerk.
[1] The definitional section in Central Mutual's garage coverage policy defines "auto" as a land motor vehicle, trailer, or semitrailer.