RUBY ET AL., APPELLANTS, *v.* MIDWESTERN INDEMNITY COMPANY, APPELLEE.

[Cite as Ruby *v.* Midwestern Indemn. Co. (1988), 40 Ohio St. 3d 159.]

(No. 87-2018—Submitted September 28, 1988—Decided December 29, 1988.)

*Sheldon S. Wittenberg,* for appellants.

*Middleton, Roebke & Rayle* and *Max E. Rayle,* for appellee.

WRIGHT, J. The issue presented in this case is whether the Rubys are entitled to recover under the underinsured motorist provisions of their Family Car Policy with Midwestern. The court of appeals held that they were not so entitled, finding that under the policy Midwestern's liability limit was completely offset by payments received by the Rubys. While the court did not rule on Midwestern's rights of subrogation, the parties have presented the issue for our review and it is within our discretion to *sua sponte* consider their respective claims. In this regard, we express no opinion as to whether the policy allows the extent of setoff determined below. However, because we find that the Rubys have so interfered with the subrogation rights of Midwestern that the underinsurance liability of Midwestern should be completely discharged, we affirm.

The General Assembly has specifically granted to uninsured and underinsured motorist carriers the right of

subrogation.[1] To that end, the Ruby policy contained several common provisions designed to protect the subrogation rights of Midwestern. Page 2 of the policy provides: "In the event of an accident, notify us [Midwestern] *promptly.*" (Emphasis added.) Part V of the policy details Midwestern's right to subrogation as follows:

"In the event of any payment under this policy, we are entitled to all the rights of recovery that the person or organization to whom payment was made has against another. That person or organization must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and *do nothing after loss to prejudice our rights.*

"When a person has been paid damages by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment." (Emphasis added.)

Appellants in the present case have failed to meet the crucial precondition of protecting appellee's subrogation rights. The policy required the Rubys to notify Midwestern "promptly" in the event of an accident. A provision in an insurance policy requiring "prompt" notice to the insurer requires notice within a reasonable time in light of all the surrounding facts and circumstances. See, *e.g., Heller* v. *Standard Acc. Ins. Co.* (1928), 118 Ohio St. 237, 242, 160 N.E. 707, 709; *Patrick* v. *Auto-Owners Ins. Co.* (1982), 5 Ohio App. 3d 118, 119, 5 OBR 235, 236, 449 N.E. 2d 790, 791. Unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary. *Patrick, supra,* at 119, 5 OBR at 236, 449 N.E. 2d at 791.

The parties agree that Midwestern was not notified until June 6, 1985, eleven months after the accident. We need not decide whether an eleven-month delay is so unreasonable that prejudice should be presumed, as there is ample evidence that Midwestern was in fact prejudiced by the delay. First, it deprived Midwestern of any meaningful opportunity to investigate the accident and determine the relative fault of the parties involved; and second, because the deadline for filing claims against the Resendez estate had passed, Midwestern lost any ability to assert a claim against the estate. Thus we find that appellants' failure to provide timely notice was prejudicial to appellee and its right to subrogation.

In addition to the delay in notice, the Rubys have taken direct action which interfered with Midwestern's subrogation rights. Midwestern was deprived of the opportunity to assert a claim against the Resendez estate not only by the untimeliness of notice but also by the Rubys' failure to assert a claim against the estate on their own behalf, their acceptance of a disproportionate share of the proceeds of the estate's wrongful death action against B&O, and their consent to and participation in the final distribution of the estate assets. The inventory and appraisal of the Resendez estate showed a gross estate of $47,400, a substantial

---

[1] R.C. 3937.18(E) provides:

"In the event of payment to any person under the coverages required by this section and subject to the terms and conditions of such coverages, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made * * *."

portion of which could have been employed to compensate the Rubys. Their failure to assert a claim or otherwise seek adequate compensation from the estate consequently barred any application of estate assets to reimburse Midwestern for all or part of the Rubys' underinsured motorist claim.

Finally, appellants settled their claims against B&O on September 13, 1985, and received $50,000 from Westfield under the Resendez policy on January 16, 1986. These actions were accompanied by releases of the railroad and the Resendez estate. It is well-settled in Ohio that by executing a release which precludes an insurer from exercising its subrogation rights an insured materially breaches his insurance contract and discharges his insurer from its obligation to provide coverage. *Bogan* v. *Progressive Cas. Ins. Co.* (1988), 36 Ohio St. 3d 22, 31, 521 N.E. 2d 447, 456; *Smith* v. *Travelers Ins. Co.* (1976), 50 Ohio App. 2d 349, 4 O.O. 3d 292, 363 N.E. 2d 750, syllabus, affirmed (1977), 50 Ohio St. 2d 43, 4 O.O. 3d 114, 362 N.E. 2d 264.

The subrogation rights of underinsurance carriers have been similarly protected in other jurisdictions. See, *e.g., March* v. *Mountain States Mut. Cas. Co.* (1984), 101 N.M. 689, 687 P. 2d 1040; *Frey* v. *Independence Fire & Cas. Co.* (Okla. 1985), 698 P. 2d 17; *Stanko* v. *Hartford Acc. & Indemn. Co.* (1979), 121 R.I. 331, 397 A. 2d 1325; *Paape* v. *Northern Assurance Co. of America* (1987), 142 Wis. 2d 45, 416 N.W. 2d 665.[2] By releasing the Resendez estate and B&O the Rubys destroyed Midwestern's subrogation rights, and thus the Rubys are not entitled to underinsured motorist coverage.

Accordingly, for the reasons stated herein, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., LOCHER, HOLMES, and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in the syllabus and judgment.

SWEENEY, J., dissents.

DOUGLAS, J., concurring in syllabus and judgment. I concur in the syllabus and the judgment of the majority. The decision of the court of appeals, however, should be affirmed on the basis stated in that court's opinion, to wit: that the payments received by the Rubys from B&O and Westfield should be set off against Midwestern's liability limit under the policy issued by it to the Rubys. By admittedly, *sua sponte,* raising the subrogation issue, in a further attempt to shore up the ill-advised decision in *Bogan* v. *Progressive Cas. Ins. Co.* (1988), 36 Ohio St. 3d 22, 521 N.E. 2d 447, the majority only further confuses the issue. The inevitable consequence of reaching a predetermined result is convolution.

In addition, while I do not concur in Justice Sweeney's ultimate result as expressed in his dissent, I do, however, agree with his analysis of those issues

---

[2] In an earlier case, *Vogt* v. *Schroeder* (1986), 129 Wis. 2d 3, 20-21, 383 N.W. 2d 876, 883, the Wisconsin Supreme Court adopted a procedure whereby a claimant and his underinsurer shall proceed in such a fashion as to provide the claimant underinsurance coverage while preserving the underinsurer's subrogation rights. However, in *Paape* the court noted that the procedure adopted in *Vogt* would not affect the result in the case *sub judice* because the settlement therein predated the *Vogt* decision. *Paape, supra,* at 55, 416 N.W. 2d at 669, fn. 2.

which would be dispositive of this case, absent setoff.

SWEENEY, J., dissenting. The majority herein *sua sponte* considers an issue that was not reviewed by the court of appeals below. In my opinion, such a practice undermines confidence in the orderly process of appellate procedure, and does nothing more than give the impression that the majority is raising the issue in order to arrive at a predetermined result.

The reason the majority bypasses the main issue presented in this appeal, *i.e.*, whether plaintiffs are entitled to recover under the underinsured motorist provision of their policy with defendant, is quite obvious in my view. The majority glosses over this issue because the language of the policy can, under a reasonable interpretation, entitle plaintiffs to a recovery under the facts developed below. This same conclusion may be drawn from the provisions in the policy dealing with setoff, namely, that defendant-insurance company is not clearly entitled to a setoff under a reasonable interpretation of the subject underinsured motorist provision.

It is black-letter law in this state that "[l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95, 68 O.O. 2d 56, 313 N.E. 2d 844, syllabus. Moreover, as this court held in *James* v. *Michigan Mut. Ins. Co.* (1985), 18 Ohio St. 3d 386, 18 OBR 440, 481 N.E. 2d 272, at paragraph two of the syllabus:

"An insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such set-off (1) is clearly set forth in the terms of the underinsured motorist coverage. * * *"

In reviewing the thrust of the majority opinion, I cannot help but conclude that the majority has misapplied the proper standards to be used in insurance-contract-interpretation cases and has, in this particular case, strictly construed the terms of the contract against the insured, and liberally construed the terms in favor of the drafter of the contract, *i.e.*, defendant.

Since the majority decides the instant cause on an issue not reviewed by the court of appeals, nor on the issues heretofore mentioned in this dissent, several relevant facts should be illuminated here. As plaintiffs point out, with regard to defendant's subrogation rights, defendant was aware of the accident at issue *prior to* plaintiffs' settlement with B&O Railroad and Resendez's insurer. Since defendant's agent Frost-Stange issued both Resendez's policy and plaintiffs' policy, the defendant, by and through its agent, Frost-Stange, would have been aware of the accident at issue and all of the surrounding circumstances when defendant received the Resendez claim for property damage. To say that defendant had no knowledge of the accident or claims that were being made is ludicrous when in reality Frost-Stange, its agent, had such knowledge.

Additionally, the majority reaches its conclusions based on the mistaken assumption that plaintiffs were under some duty to file a claim against the Resendez estate. As mentioned before, defendant, through its agent, appears to have had ample notice of the accident prior to any settlements that were made and prior to the close of the Resendez estate. As plaintiffs submit, however, and contrary to the majority's intimations, there was nothing that the defendant-insurer could have

164

done. By operation of its own policy, defendant required plaintiffs to recover the limits of the Resendez policy before their underinsured motorist coverage would be effective. In order to accomplish this, plaintiffs were required by Resendez's insurer to obtain a full and complete release. Thus, even if plaintiffs had filed a claim against the Resendez estate, as the majority states they should have, the claim would have been released by plaintiffs when settling with Resendez's insurer by operation of defendant's own policy. As plaintiffs assert, they cannot be said to have interfered with defendant's subrogation rights when plaintiffs' actions were in complete and

total compliance with the terms and conditions of their policy with defendant.

Based on the foregoing, I would reverse the decisions of the courts below thereby finding underinsured motorist coverage for plaintiffs. At the very least, however, I would remand the cause to the court of appeals to determine whether defendant's subrogation rights were interfered with. The action of the majority in *sua sponte* deciding this cause on an issue not reviewed below deprives the parties of a full appellate review and establishes a convenient standard for courts to resort to result-oriented jurisprudence in the future.