JOURNAL ENTRY and OPINION.
{¶ 1} Plaintiff-appellant David P. Gruelich appeals the trial court's granting summary judgment in favor of defendant-appellee, The Hartford (Hartford). For the reasons below, we affirm the trial court's decision.
 {¶ 2} On August 2, 1986, Gruelich was injured as a passenger in a car accident. He settled his claims for $12,500, the limit of the driver's insurance policy. At the time of the accident, Gruelich's father was employed by Picker International Inc. (nka Marconi Medical Systems, Inc.). Picker was insured under a comprehensive general liability ("CGL") coverage policy and a business auto policy with Hartford. Gruelich claims that he qualifies as an "insured" under these policies pursuant toScott-Pontzer v. Liberty Mutual Fire Ins. Co. (1999), 85 Ohio St.3d 660, and Ezawa v. Yasuda Fire Marine Co. of Am., 86 Ohio St.3d 557,1999-Ohio-124.
 {¶ 3} On July 23, 2001, ten days prior to the expiration of the fifteen-year statute of limitations,[1] Gruelich commenced this action by filing a complaint seeking declaratory judgment ordering that he is entitled to uninsured/underinsured (UM/UIM) coverage under the Hartford policy, a declaratory judgment ordering this matter to arbitration, a declaratory judgment ordering that he is entitled to separate recoveries exclusive of any set-off provisions in the Hartford policy, a judgment award in the amount of twenty million dollars for breach of contract, personal injuries, emotional injuries, medical bills,[2] lost wages, and attorneys fees. Both parties filed motions for summary judgment. On February 14, 2002, the trial court granted Hartford's motion, declaring that Gruelich does not qualify as an insured under the Hartford policy.
Definition of Insured
 {¶ 4} On appeal, Gruelich argues that the trial court erred in granting summary judgment for Hartford. He argues that in accordance with the Ohio Supreme Court's decisions in Scott-Pontzer and Ezawa, he is an "insured" under the UM/UIM endorsement contained in the business auto insurance policy and the CGL policy, both of which were issued by Hartford and held by Picker at the time of his accident.
 {¶ 5} As in the instant case, Scott-Pontzer involved a commercial automobile insurance policy and an "umbrella/excess" insurance policy issued to a corporation. In Scott-Pontzer, the plaintiff claimed a right to underinsured motorist coverage under her husband's employer's policy, after her husband died in an automobile accident. The UM/UIM endorsement defined the insured as "you," and "if you are an individual, any family member." The insurance company argued that "you" referred only to the corporation. However, the Scott-Pontzer court concluded that it did not make sense to limit protection to the corporation only, because "a corporation cannot occupy an automobile, suffer bodily injury or death or operate a motor vehicle." Id. The court further found that the language of the policy was ambiguous, construed it in favor of the plaintiff, and found that her husband was an insured under the policy.
 {¶ 6} The court further noted that the policy did not contain any language which made coverage contingent upon employees acting within the scope of their employment. Accordingly, the Scott-Pontzer court held that in the absence of contract language restricting coverage to employees who were acting within the scope of their employment, no such restriction would be read into the policy. See Id.
 {¶ 7} In regard to the excess coverage policy, the Scott-Pontzer
court determined that because no UM/UIM coverage was extended under the policy, such coverage was part of the excess coverage policy by operation of law pursuant to R.C. 3937.18.
 {¶ 8} The Ohio Supreme Court's decision in Ezawa followed. The policy in Ezawa included a definition of insured identical to the definition in the Scott-Pontzer policy. In Ezawa, an employee's child sought coverage under his father's employer's commercial auto insurance policy. The trial and appellate courts found that the employee's child did not qualify for benefits under the policy. See Ezawa v. The YasudaFire Marine Ins. Co. of Am. (June 30, 1998), 10th Dist. No. 97APE10-1343. However, the Ohio Supreme Court, without opinion, and relying on the authority of Scott-Pontzer reversed the appellate court's decision. Ezawa v. Yasuda Fire Marine Ins. Co. of Am.,86 Ohio St.3d 557, 1999-Ohio-124.
 {¶ 9} Here, the UIM endorsement defines insureds, in pertinent part, as follows:
 {¶ 10} "D. Who is An Insured
 {¶ 11} "1. You or any family member.
 {¶ 12} "2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. * * *
 {¶ 13} "3. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured."
 {¶ 14} Based on the Ohio Supreme Court's analysis inScott-Pontzer and Ezawa, and the similarity between the language in the policies therein and the Hartford policy, we find that Gruelich was an insured under the UM/UIM endorsement contained in the business auto policy that Hartford provided to Picker at the time of the accident.
Rejection of UM/UIM Coverage
 {¶ 15} Hartford argues that it rejected UM/UIM coverage. However, a review of the rejection form reveals that it did not contain a brief description of the coverage, the premium for that coverage, or an express statement of the UM/UIM coverage limits. See Linko v. Indemnity Ins.Co., 90 Ohio St.3d 445, 2000-Ohio-92. Thus, because the rejection form did not contain the required elements, it is invalid. See Id.
 {¶ 16} Thus, having concluded that Gruelich was an insured under the business auto policy at issue, we must now determine whether he is entitled to UIM coverage.
Conditions Precedent to Coverage
 {¶ 17} Hartford asserts that Gruelich is not entitled to underinsured motorist coverage under the business auto policy because he has not complied with the conditions precedent in the policy.
 {¶ 18} Part C of the UIM endorsement, entitled "WE WILL NOT COVER-EXCLUSIONS," reads in part:
 {¶ 19} "This insurance does not apply to:
 {¶ 20} "1. Any claim settled without our consent."
 {¶ 21} The Conditions section of the business auto policy is specifically referenced by the UIM endorsement, and the endorsement merely changes the original conditions by adding additional duties.[3] Thus, the Conditions set forth in the business auto policy are applicable to UIM coverage. See Cincinnati Insurance Co. v. McClain, 2nd Dist. No. 2001-CA-96, 2002-Ohio-1190.
 {¶ 22} Part VI of the business auto policy, entitled "Conditions," reads in part: "The insurance provided by this policy is subject to the following conditions: "A. YOUR DUTIES AFTER ACCIDENT OR LOSS. "1. You must promptly notify us or our agent of any accident or loss. You must tell us how, when and where the accident or loss happened. You must assist in obtaining the names and addresses of any injured persons and witnesses.
 {¶ 23} "* * * "C. OUR RIGHT TO RECOVER FROM OTHERS.
 {¶ 24} "If we make any payment, we are entitled to recover what we paid from other parties. Any person to or for whom we make payment must transfer to us his or her rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize them."
 {¶ 25} The failure to give any notice or to seek the consent of the insurer to a proposed settlement when an insurance contract has a subrogation clause is a material breach of the contract. Ferrando v.Auto-Owners Mut. Ins. Co. (Aug. 31, 2001), 11th Dist. No. 2000-A-0038,appeal allowed, 94 Ohio St.3d 1451.[4] The insurer is not required to pay the claim as a result of the failure to give notice of the settlement offer. Id., citing Paskel v. Allstate Ins. (Apr. 12, 1996), 11th Dist. No. 95-T-5270.
 {¶ 26} Further, an insurer may require, as a precondition to underinsurance coverage, that the injured party not compromise or destroy the insurer's subrogation right. Id.
 {¶ 27} The insurance contract issued by Hartford required the insured to promptly notify it of any loss or accident and further required Hartford's consent prior to settlement. In addition, the insured was required to do everything necessary to secure Hartford's subrogation rights. These were preconditions to coverage.
 {¶ 28} To determine if Gruelich gave the required notice to Hartford, this Court must determine whether Gruelich's notice was "promptly" given to Hartford. A provision in an insurance policy requiring "prompt" notice to the insurer requires notice within a reasonable time in light of all of the surrounding facts and circumstances. See Ruby v. Midwestern Indemn. Co. (1988),40 Ohio St.3d 159, 161, 532 N.E.2d 730.
 {¶ 29} Gruelich did not notify Hartford of the 1986 accident or of the underinsured motorist claim until December 2000. Furthermore, he failed to seek Hartford's consent in settling this matter and failed to notify Hartford of the settlement until nearly fifteen years later.
 {¶ 30} This court cannot conclude that Gruelich's notice was "prompt" or within a reasonable time in light of all of the surrounding facts and circumstances.
 {¶ 31} Gruelich offers as his reason for delay that he was unaware that he could file a claim with Hartford until after the Supreme Court decided Scott-Pontzer and its progeny which allowed employees and family members to be considered "insureds" and recover uninsured/underinsured motorist coverage under commercial liability policies. While we do not dispute that Scott-Pontzer can be retroactively applied, we disagree that awaiting a favorable court decision is a reasonable excuse for a fourteen-year delay in filing a claim. See McClain, supra; Heiney v.Hartford, 10th Dist. No. 01AP-1100, 2002-Ohio-3718.
 {¶ 32} Although this court has not previously addressed this issue within the context of Scott-Pontzer, several districts have held that an insured's failure to notify its insurer of a settlement is a material breach of the insurance contract and relieves the insurer of the duty to provide insurance benefits. See Thorley v. American States Preferred, 9th Dist. No. 20827, 2002-Ohio-1253; Heiney, supra; Withem v. CincinnatiIns. Co., 10th Dist. No. 01aP-1286; Altasis v. Nationwide, 10th Dist. No. 01AP-1038; McClain, supra; Green v. Cincinnati Ins. Co. (Dec. 7, 2001), 6th Dist. No. H-01-018.
 {¶ 33} We agree that generally an insurance company may deny coverage when notice of the claim is given late. Ruby, supra; AmericanEmployers Ins. Co. v. Metro Regional Transit Auth. (6th Cir. 1993),12 F.3d 591. However, delay in giving notice will prevent coverage only when the delay prejudices the insurer in protecting its rights. PresriteCorp. v. Commercial Union Ins. Co. (1994), 113 Ohio App.3d 38; West Am.Ins. Co. v. Hardin (1989), 59 Ohio App.3d 71, 571 N.E.2d 449.
 {¶ 34} By settling his claim with the tortfeasor, Gruelich failed to secure Hartford's rights as required in Part VI, Section C of the business auto policy. Gruelich's actions materially prejudiced Hartford's subrogation rights and, therefore, Hartford is under no obligation to provide coverage under the policy. Withem; Altasis; Ferrando.
 {¶ 35} Based on the foregoing, we find that Gruelich failed to comply with the notice requirement of the insurance policy by failing to notify Hartford of the accident within a reasonable time.
Coverage By Operation of Law
 {¶ 36} Next, we must determine whether UIM coverage arises by operation of law under the CGL policy. At the time that the policy was obtained, former R.C. 3937.18[5] was in effect. Former R.C. 3937.18
provided that no automobile liability policy of insurance shall be issued with respect to any motor vehicle registered in this state unless underinsured motorist coverage, in an amount of coverage equivalent to the automobile liability coverage is provided to the insured. See R.C.3937.18 as recited in footnote 5.
 {¶ 37} Thus, if Hartford's comprehensive general liability policy provides coverage for injuries resulting from the use of an automobile, then UIM coverage applies by operation of law.
 {¶ 38} In pertinent part, Hartford's CGL policy states:
 {¶ 39} "I. * * * Exclusions
 {¶ 40} "This insurance does not apply:
 {¶ 41} "(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
 {¶ 42} "(1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or
 {¶ 43} "(2) any other automobile or aircraft operated by any person in the course of his employment by any insured;
 {¶ 44} "but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured."
 {¶ 45} Gruelich maintains that the above "parking" exception to the exclusion constitutes an offer of automobile coverage and thus, the mandates of the former R.C. 3937.18 apply. As such, he argues that he is entitled to UIM coverage by operation of law.
 {¶ 46} The issue of whether "parking" exceptions similar to the one in the Hartford policy constitute an offer of automobile liability coverage has recently been addressed by several districts and is currently pending before the Ohio Supreme Court. See Burkhart v. CNAIns. Co., 5th Dist. No. 2001CA00265, appeal accepted for review,96 Ohio St.3d 1438, 2002-Ohio-3344. The Burkhart court held that similar parking provisions trigger R.C. 3937.18. See id.; see also, Cox v. StateFarm, 5th Dist. No. 2001 CA00117, 2002-Ohio-3076. On the other hand, the First, Second, Sixth, and Ninth districts have determined that the "parking" exception does not constitute an offer of automobile liability insurance; thus, R.C. 3937.18 is not triggered. See Bowling v. St.Paul, 1st Dist. No. C-020089, 2002-Ohio-4933; De Uzhca v. Derham, 2nd Dist. No. 19106, 2002-Ohio-1814; Devore v. Richmond, 6th Dist. No. 99-CV-527; Gilcreast-Hill v. Ohio Farmers Ins. Co., 9th Dist. No. 2001-11-5396, 2002-Ohio-4524. However, these cases applied a post-H.B. 261 version of R.C. 3937.18 in which the scope of the statute was narrowed. See Jump v. Nationwide Mutual Ins. Co., 2nd Dist. No. 18880, 2001-Ohio-1699. The post-H.B. 261 version of R.C. 3937.18, states that the mandatory UM/UIM coverage will only apply when the automobile liability policy serves as proof of financial responsibility for a specifically identified vehicle. See R.C. 3937.18(L) and R.C. 4509.01(K).
 {¶ 47} However, the Uzhca court cited the post-H.B. 261 version of R.C. 3937.18 as only one of two reasons in support of its decision to deny UM/UIM coverage. It also distinguished the provision at issue from the provision interpreted by the Ohio Supreme Court in Selander v. ErieIns. Group (1999), 85 Ohio St.3d 541.
 {¶ 48} Gruelich relies on Selander for the proposition that any limited motor vehicle liability coverage is sufficient to impose UM/UIM coverage as a matter of law.
 {¶ 49} Selander, which interpreted a pre-H.B. 261 version of R.C. 3937.18, involved a CGL policy that excluded coverage for liability arising from the use of automobiles, but provided coverage for claims arising from the use of "non-owned" or hired automobiles used in the insured's business. The court found that mandatory UM/UIM coverages under R.C. 3937.18 applied because the policy provided liability coverage for non-owned and hired motor vehicles.
 {¶ 50} The case at hand is distinguishable from Selander. Unlike the policy in Selander, the instant policy does not provide coverage for non-owned or hired vehicles. It provides coverage only for the parking of vehicles not owned by the insured. In Davidson v. Motorists Mut.Ins. Co. (2001), 91 Ohio St.3d 262, 267, the Supreme Court distinguished Selander and noted that it expressly provided for coverage for "automobiles that were used and operated on public roads." While the Hartford policy may provide limited coverage for automobiles that can be used on public roads, it expressly does not provide coverage for such use, but only for vehicles that are being parked and that are not owned by the insured. See Uzhca. Thus, the "parking" exception contained within the Hartford CGL policy does not constitute an offer of automobile liability coverage. Accordingly, Gruelich is not entitled to UIM coverage by operation of law.
 {¶ 51} Summary judgment for Hartford was appropriate because (1) Gruelich failed to comply with conditions precedent to coverage and (2) UIM coverage did not arise by operation of law.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J. CONCURS; PATRICIA ANN BLACKMON, J. DISSENTS INSEPARATE DISSENTING OPINION.
[1] ¶ a "An insurance policy is a contract, and * * * the relationship between the insured and the insurer is purely contractual in nature." Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d at 663.
¶ b "An action upon a * * * contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued." R.C. 2305.06.
[2] Gruelich maintains that his medical expenses were in excess of the driver's insurance policy; however, no specific amounts have been provided in the record.
[3] ¶ a Part F of the UIM endorsement, entitled "CHANGES IN CONDITIONS," reads in part:
¶ b "The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:
¶ c "* * *
¶ d "2. YOUR DUTIES AFTER ACCIDENT OR LOSS is [sic] changed by adding the following:"
[4] We acknowledge that the issues raised in Ferrando are currently pending before the Ohio Supreme Court; however, we find Ferrando persuasive, and address the issues raised by the parties herein accordingly.
[5] R.C. 3937.18 [Mandatory offering of uninsured and underinsured motorist coverage.] (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided: * * *
(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.