DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court on the judgments of the Lucas County Court of Common Pleas which granted appellees, Royal Insurance Company of America ("Royal") and The Cincinnati Insurance Company ("Cincinnati"), summary judgment against appellants, Mary Ann Maltz, individually, and as administratrix of the estate of Scott D. Maltz, David Maltz, decedent's father, and Brian Maltz, decedent's brother, and denied appellants' cross-motions for summary judgment against Royal and Cincinnati. For the reasons that follow, we reverse, in part, and affirm, in part, the decisions of the trial court.
 {¶ 2} This action arose as a result of an automobile collision which occurred on November 22, 1992. Scott Maltz ("decedent"), a minor, was a passenger in a car owned and driven by Debra Garling, a neighbor, along with his mother, Mary Ann Maltz, and his brother, Brian Maltz, which was struck by a vehicle driven by David Borgman. The Maltz family's personal injury claims were settled with each driver and their respective insurance companies in 1995. Full releases were signed. The Maltz family also settled with their liability insurance carrier for underinsured motorist coverage benefits. However, as a result of injuries sustained in the 1992 collision, Scott Maltz died on May 30, 1997.
 {¶ 3} In 1998 and 1999, Allstate Insurance Company, Owner's Insurance Company and Ms. Garling settled with the estate of Scott Maltz on its claim for wrongful death. Releases concerning the estate's claim for wrongful death were executed. In this case, filed on October 20, 2000, pursuant to the precedent established by Scott-Pontzer v. LibertyMut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, appellants sought compensatory damages relative to the decedent's alleged wrongful death against Royal, Cincinnati, United States Fidelity Guarantee Insurance Company ("USFG"), Auto-Owners Insurance Company ("Auto-Owners"), and Heidtman Steel. Heidtman Steel was voluntarily dismissed and cross-motions for summary judgment were filed with respect to appellants' claims against the insurance companies. The trial court ruled on the parties' motions for summary judgment on April 5, 2002.
 {¶ 4} The parties appealed the decisions of the trial court. However, during the pendency of the appeal, appellants dismissed USFG and Auto-Owners.[1] As such, the only issues that remain pending before this court concern appellants' claims against Royal and Cincinnati. Thus, appellants' remaining assignments of error, which will retain their original numbering, are as follows:
 {¶ 5} "Assignment of Error II
 {¶ 6} "The trial court erred to the prejudice of the plaintiff when it granted the defendant Cincinnati Insurance Company's motion for summary judgment."
 {¶ 7} "Assignment of Error IV
 {¶ 8} "The trial court erred to the prejudice of the plaintiff when it granted the defendant Royal Insurance Company's motion for summary judgment."
 {¶ 9} Royal filed a cross-appeal and asserts the following cross-assignments of error:
 {¶ 10} "Appellee/Cross-Appellant's Assignment of Error No. I: The trial court erred in determining that appellants were insureds under either the Business Auto Policy and/or following Form Excess Policy as appellants were not covered persons under the policy and that policy is not otherwise ambiguous.
"Appellee/Cross-Appellant's Assignment of Error No. II: As General Motors Corporation, pursuant to a written contract, had a $6.5 million per occurrence self-insured retention, Royal is entitled to judgment as a matter of law that there is no UM/UIM coverage available to the Maltzes.
 {¶ 11} "Appellee/Cross-Appellant's Assignment of Error No. III: The trial court erred by holding that the Ohio Supreme Court's decision in Linko v. Indemnity Ins. Co. of North America (2000), 90 Ohio St.3d 645, applies retroactively, thereby voiding General Motors' election to limit UM/UIM coverage to $12,500/$25,000."
 {¶ 12} This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
Claim Against Cincinnati Insurance Company
 {¶ 13} Mary Ann Maltz, decedent's mother, was an employee of Heidtman Steel Products, Inc. ("Heidtman") at the time of the incident. Appellants sought uninsured/underinsured ("UM/UIM") coverage through USFG, Heidtman's liability carrier, and Cincinnati, Heidtman's umbrella carrier. On April 5, 2002, the trial court granted summary judgment to Cincinnati and denied appellants' cross-motion. The trial court held that Cincinnati was entitled to summary judgment insofar as appellants had failed to provide Cincinnati prompt notice of the 1992 auto collision and destroyed Cincinnati's subrogation rights.
We note at the onset that Cincinnati makes no assertion that appellants are not insureds. Accordingly, we will proceed directly to the issues of whether appellants complied with the policy conditions concerning prompt notice and subrogation rights. Cincinnati's umbrella policy contained a provision for UM coverage. However, Cincinnati's policy also contained conditions to coverage, e.g., Form No. U.S. 101 P (5/90), Part III — The Conditions, paragraphs 3 and 6, stated the following:
 {¶ 14} "3. The Insured's Duties in the Event of Occurrence, Claim or Suit
 {¶ 15} "In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to us or any of our
authorized agents as soon as practicable. * * *
 {¶ 16} "6. Subrogation
 {¶ 17} "In case of any payment by us of ultimate net loss
hereunder, we shall be subrogated to all the Insured's rights of recovery therefore, and will act in concert with all other interest (including theInsured) concerned. * * *"
 {¶ 18} In addition, Cincinnati's "Excess Uninsured Motorist Coverage Endorsement — Ohio" states at paragraph 3 that the excess UM coverage "applies in excess of and only to the extent insurance is provided by the Basic Policies as scheduled in the Declarations and subject to all its conditions and limitations other than limit of coverage/liability and the provisions of this endorsement." USFG's policy, over which Cincinnati provided excess coverage, also contained a provision for UM coverage in Ohio and a subrogation clause, which stated:
 {¶ 19} "A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle."
 {¶ 20} It is well-settled that "a subrogation clause is reasonably includable in contracts providing underinsured motorist insurance." Boganv. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, paragraph 4 of the syllabus. In addition, a subrogation clause was considered to be both a valid and enforceable precondition to coverage. Id. During the pendency of this appeal, however, the Ohio Supreme Court overruled this principle. Ferrando v. Auto-Owners Mut. Ins. Co. (2002), 98 Ohio St.3d 186,2002 Ohio 7217, paragraph two of the syllabus. Ferrando considered both prompt notice and subrogation provisions in a motor vehicle insurance policy. The Ohio Supreme Court held that rather than denying coverage based on an insured's failure to comply with a precondition of coverage, such as protecting subrogation rights, a court must instead apply a two-step analysis when making such a determination. Id. at 208, ¶ 89.
 {¶ 21} The Ohio Supreme Court explained that, when evaluating whether a prompt-notice or consent-to-settle (or other subrogation-related) provision in a UIM policy was breached, the court must conduct a two-step inquiry and determine (1) whether an actual breach occurred; and (2) if a breach did occur, whether the insurer was prejudiced so that UM "coverage must be forfeited." Ferrando at 208, ¶ 89.
 {¶ 22} In cases based upon late notice of a claim, the court must consider whether the insurer was notified "`within a reasonable time in light of all surrounding facts and circumstances'." Id. at ¶ 90, quoting Ruby v. Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159, syllabus. If notice was timely under this test, the provision was not breached and UM/UIM coverage is available. Id. If, however, the insurer did not receive reasonable notice of a claim, the court must consider whether the insurer was prejudiced by the claim. Id. Unreasonable notice gives rise to a presumption of prejudice to the insurer; therefore, the insured bears the burden of presenting rebuttal evidence. Id. "[T]he insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice." Id. at paragraph one of the syllabus.
 {¶ 23} In cases based on subrogation rights, the court must first consider whether the provisions related to subrogation were actually breached. If not, coverage exists. Id. at ¶ 91. If the relevant provision was breached, the trial court must determine whether the insurer was prejudiced. Id. Again, a presumption of prejudice arises from the breach, and the insured bears the burden of presenting evidence to the contrary. Id. "[T]he insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights." Id. at paragraph two of the syllabus.
In this case, the trial court thoroughly considered the issues of prompt notice and the destruction of Cincinnati's subrogation rights. However, insofar as the trial court relied in part on the law in Bogan, which has since been overruled by Ferrando, we find that this matter must be reversed and remanded to apply the two-step inquiry and specified factors listed in Ferrando. See Ferrando at 211; Cincinnati Ins. Co. v.McClain (2003), 98 Ohio St.3d 492, 2003 Ohio 2147; Thorley v. Am. StatesPreferred (2003), 98 Ohio St.3d 493, 2003 Ohio 2148; and Johnson v. StateFarm Mut. Auto. Ins. Co. (Apr. 11, 2003), 6th Dist. App. No. L-02-1251, Ohio 18642003. Appellants second assignment of error is therefore found well-taken.
Claim Against Royal Insurance Company of America
 {¶ 24} David Maltz, decedent's father, was an employee of General Motors Corporation ("GM") at the time of the incident. Appellants sought UM/UIM coverage through Royal, GM's business auto policy carrier and excess carrier. The parties filed cross-motions for summary judgment. The trial court held that appellants were not entitled to coverage under Royal's business auto policy, #PTA 760082. The trial court stated that, pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660, and Ezawa v. Yasunda Fire Marine Ins. Co. of Am.
(1999), 86 Ohio St.3d 557, appellants were "insureds" under Royal's business auto policy. The trial court also stated that due to an ambiguity in the policy, the vehicle in which the decedent was riding at the time of the incident was a covered auto under the business auto policy. Nevertheless, the trial court held that appellants were not entitled to UM/UIM coverage under Royal's business auto policy because they failed to provide Royal prompt notice of their claims and destroyed Royal's subrogation interests, both preconditions to coverage in Royal's policy. The trial court additionally held, with respect to Royal's excess business auto policy, #PTA 923500, that appellants were not entitled to coverage because they failed to provide Royal prompt notice of their claims and destroyed Royal's subrogation interests.
 {¶ 25} On appeal, we will begin our analysis by considering Royal's cross-assignments of error first. Royal argues in its first cross-assignment of error that the trial court erred in determining that appellants were insureds under Royal's policies. We agree.
 {¶ 26} Unlike the policy language in Scott-Pontzer, which the Ohio Supreme Court found to be ambiguous, we find that Royal's policy is substantially different from the policy in Scott-Pontzer. The UM coverage in Scott-Pontzer stated as follows:
 {¶ 27} "B. Who Is An Insured
 {¶ 28} "1. You.
 {¶ 29} "2. If you are an individual, any family member.
 {¶ 30} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 31} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." Scott-Pontzer, supra at 663.
 {¶ 32} Royal's business auto policy, #PTA 760082, lists GM and its subsidiaries as the "Named Insured." Royal's business auto policy also provides UM/UIM coverage as follows:
"PART V — UNINSURED/UNDERINSURED MOTORIST COVERAGE
 {¶ 33} "INSURING AGREEMENT
 {¶ 34} "WE will pay damage which a COVERED PERSON is legally entitled to recover as damages from the owner or operator of an UNINSURED or UNDERINSURED MOTOR VEHICLE. The damage must result from BODILY INJURY sustained by a COVERED PERSON and caused by an ACCIDENT and PROPERTY DAMAGE caused by an accident.
 {¶ 35} "The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the UNINSURED or UNDERINSURED MOTOR VEHICLE.
 {¶ 36} "Any judgment for damages arising out of a suit brought without our written consent is not binding on us.
 {¶ 37} "COVERED PERSON as used in this PART V means:
 {¶ 38} "1. Any person occupying your COVERED AUTO.
 {¶ 39} "2. Any person for damages that person is entitled to recover because of BODILY INJURY to which this coverage applies sustained by a person described in 1 above.
 {¶ 40} With respect to UM/UIM coverage, Royal's business auto policy, Part II, defines "COVERED AUTOS" as "any owned auto."
 {¶ 41} Contrary to the trial court's decision, we find thatScott-Pontzer, supra, and Ezawa, supra, do not mandate coverage in this instance. We recognize that only a corporation was listed as a "Named Insured." We also recognize that the Ohio Supreme Court has clearly stated that "[i]t would be nonsensical to limit [UM] protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle."Scott-Pontzer at 664. However, in contrast to the policy language inScott-Pontzer, which provided blanket UM coverage to "you," Royal's UM/UIM coverage is limited to "Any person occupying your COVERED AUTO." "Your" is defined by the policy to be GM and its subsidiaries. "Covered Auto" is defined as "any owned auto." Thus, we find that Royal's policy unambiguously provides UM/UIM coverage to any person occupying an auto owned by GM or its subsidiaries. Clearly, Royal's UM coverage protects persons, not vehicles, as required by former R.C. 3937.18. See Martin v.Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478, paragraph one of the syllabus; see, also, Scott-Pontzer at 664.
 {¶ 42} Insofar as no person was injured in an auto owned by GM or its subsidiaries, we find that Royal's policy does not provide UM/UIM coverage to appellants for the injuries sustained in this collision. Because appellants were not insureds pursuant to Royal's business auto policy, "the underlying policy," we find that appellants are not entitled to coverage pursuant to Royal's excess business auto policy. Accordingly, we find that reasonable minds can only conclude that Royal was entitled to summary judgment as a matter of law on this basis. Royal's first cross-assignment of error is therefore found well-taken.
 {¶ 43} Based on our decision with respect to Royal's first cross-assignment of error, we find appellant's fourth assignment of error not well taken. We additionally find that Royal's second and third cross-assignments of error are moot and not well taken.
 {¶ 44} On consideration whereof, we affirm the decision of the Lucas County Court of Common Pleas granting Royal Insurance Company of America's motion for summary judgment, albeit on other grounds, against appellants. In addition, we reverse the decision of the Lucas County Court of Common Pleas which granted Cincinnati Insurance Company summary judgment against appellants. In accordance with this court's decision as to appellants' second assignment of error and the decision of the Ohio Supreme Court in Ferrando v. Auto-Owners Mut. Ins. Co. (2002),98 Ohio St.3d 186, 2002 Ohio 7217, we further order that this matter be remanded to the trial court for further consideration and determination. Appellants are ordered to pay court costs with respect to their claims against Royal. Cincinnati is ordered to pay the court costs of this appeal with respect to appellants' claims against it.
 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Richard W. Knepper, J., Mark L. Pietrykowski, J., and Judith AnnLanzinger, J., CONCUR.
[1] See entry of dismissal. Maltz v. Royal Ins. Co. of Am. (Apr. 30, 2003), 6th Dist. No. L-02-1095.