OPINION
{¶ 1} Plaintiffs-appellants George Wertz, Administrator of the Estate of Deanna Jerin, et al., appeal from the May 7, 2003, Judgment Entry of the Stark County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Grange Mutual Insurance Company.
 STATEMENT OT THE FACTS AND CASE {¶ 2} On May 12, 1993, appellant Karen Rogers was operating her motor vehicle when it was struck by a truck owned by Earth 
Wood Landscaping. At the time, appellant Rogers' three granddaughters were riding in the car as passengers. While Deanna Jerin, one of the granddaughters, was killed, Rogers and her other two granddaughters were seriously injured. Appellant George Wertz is the Administrator of the Estate of Deanna Jerin.
 {¶ 3} At the time of the accident, the vehicle operated by appellant Rogers was covered by an automobile insurance policy issued by appellee Grange Mutual Insurance Company to Rogers' husband that provided UM/UIM coverage with limits of $100,000 per person and $300,000 per accident. The policy covered family members and occupants of the vehicle. In turn, Earth Wood Landscaping was insured under a $1 million liability policy issued by Commercial Union Insurance Company.
 {¶ 4} Shortly after the accident, appellee Grange Mutual Insurance Company was notified of the facts and circumstances of the accident and of appellants' injuries. In accordance with the terms of its policy, appellee Grange Mutual paid appellant Karen Rogers' claims for property damage and medical payments.
 {¶ 5} In addition, appellants made a claim against the tortfeasor's insurer and received an offer of settlement for the $1 million policy limits. On August 6, 1996, appellants settled their claim against Earth Wood for the policy limits and released all claims against Earth Wood. Appellee was notified of, and participated in, the settlement agreement.
 {¶ 6} Thereafter, In March of 2001, appellants notified appellee that they were pursuing UIM coverage under the Grange policy issued to appellant Karen Rogers' husband
 {¶ 7} On May 30, 2001, appellants filed a complaint for declaratory judgment against appellee, seeking a declaration that appellants were entitled to UIM insurance under the Grange policy up to the liability limits. Appellee Grange filed a Motion for Summary Judgment and appellants filed a memo in opposition to the same and a Cross Motion for Partial Summary Judgment.
 {¶ 8} As memorialized in a Judgment Entry filed on May 7, 2003, the trial court granted appellee's Motion for Summary Judgment while denying the motion filed by appellants. The trial court, in its entry, specifically found that appellants had breached the prompt notice provision in the policy issued by Grange and, in doing so, had prejudiced appellee's right of subrogation.
 {¶ 9} It is from the trial court's May 7, 2003, Judgment Entry that appellants now appeal, raising the following assignment of error:
 {¶ 10} "The trial court erred in granting summary judgment to appellee and denying partial summary judgment to appellants."
 Summary Judgment Standard {¶ 11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 12} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 13} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421,429, 1997-Ohio-259, 674 N.E.2d 1164, citing Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.
 {¶ 14} It is based upon this standard that we review appellants' assignment of error.
 I {¶ 15} Appellants, in their sole assignment of error, argue that the trial court erred in granting appellee's Motion for Summary Judgment and denying the Cross Motion for Partial Summary Judgment filed by appellants. We agree.
 {¶ 16} At issue in this case is whether appellants violated the terms of the Grange policy by failing to promptly notify Grange of their UIM claims. Since a policy of insurance is a contract between the insurer and the insured, rules of contract law are applied in interpreting and construing insurance policies. Gomolka v. State Auto. Mut. Ins. Co. (1982),70 Ohio St.2d 166, 436 N.E.2d 1347. In interpreting the language of an insurance policy, the words and phrases contained in such policy are to be given their plain and ordinary meaning unless there is something in the contract that would indicate a contrary intention Olmstead v. Lumbermans Mutl. Ins. Co. (1970),22 Ohio St.2d 212, 216, 259 N.E.2d 123. If the language contained in an insurance policy is clear and unambiguous, courts cannot alter the provisions of the policy and may not stretch or constrain unambiguous provisions to reach a result not intended by the parties. Gomolka, supra at 168. However, since it is the insurance carrier who generally drafts the insurance policy, any ambiguous language in a policy is construed liberally in favor of the insured. American Financial Corp. v. Fireman's Fund Ins.Co. (1968), 15 Ohio St.2d 171, 173, 239 N.E.2d 33.
 {¶ 17} In the case sub judice, Part E of the Grange policy, which is captioned "Duties After an Accident or Loss", states as follows:
 {¶ 18} "We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
 {¶ 19} "A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.
 {¶ 20} "B. A person seeking any coverage must:
 {¶ 21} "1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
 {¶ 22} "2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
 {¶ 23} "3. Submit, as often as we reasonably require:
 {¶ 24} "a. to physical exams by physicans we select. We will pay for these exams.
 {¶ 25} "b. to examination under oath and subscribe the same.
 {¶ 26} "4. Authorize us to obtain:
 {¶ 27} "a. medical reports; and
 {¶ 28} "b. other pertinent records.
 {¶ 29} "5. Submit a proof of loss when required by us.
 {¶ 30} "C. A person seeking Uninsured Motorists Coverage must also:
 {¶ 31} "1. Promptly notify the police if a hit and run driver is involved.
 {¶ 32} "2. Promptly send us copies of the legal papers if a suit is brought.
 {¶ 33} "D. A person seeking Coverage for Damage To Your Auto must also:
 {¶ 34} "1. Take reasonable steps after loss to protect your covered auto or any non-owned auto and their equipment from further loss. We will pay reasonable expenses incurred to do this.
 {¶ 35} "2. Promptly notify the police if your covered auto or any non-owned auto is stolen.
 {¶ 36} "3. Permit us to inspect and appraise the damaged property before its repair or disposal."
 {¶ 37} Under the Ohio Supplemental Policy Provisions, the following duty was added:
 {¶ 38} "A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the insured and the insurer of a vehicle described in Paragraph C 4. of the definition of uninsured motor vehicle and allow us 90 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such uninsured motor vehicle."
 {¶ 39} In the case of Ferrando v. Auto Owners Mut. Ins.Co., 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, the Ohio Supreme Court held as follows: "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary."
 {¶ 40} "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary." Ferrando at paragraphs one and two of the syllabus.
 {¶ 41} The Ferrando Court also articulated a two-step approach for determining whether the prompt notice and subrogation-related provisions were breached, and, if so, whether the breach resulted in prejudice to the extent that UIM coverage is then forfeited. "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice `within a reasonable time in light of all the surrounding facts and circumstances.'" Ruby v.Midwestern Indem. Co. (1988), 40 Ohio St.3d 159,532 N.E.2d 730], syllabus. If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precludedFerrando at 208. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Id. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut. Id.
 {¶ 42} In turn, "[i]n cases involving the alleged breach of a consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. If it was not, the inquiry is at an end, and UIM coverage must be provided . . . If the consent-to-settle or other subrogation-related clause was breached, the second step is to determine whether UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut." Ferrando, supra. at 208.
 {¶ 43} In the case sub judice, the trial court found that appellants had breached the terms of the policy by failing to provide prompt notice of their UIM claims. The trial court, in its entry, specifically held, in relevant part, as follows:
 {¶ 44} "In the case at hand, the accident in question occurred on May 12, 1993, and Plaintiffs settled with Earth 
Wood on August 6, 1996. At the time of the settlement, Grange was not notified by Plaintiffs that they were presenting a claim for underinsured motorist coverage . . . Plaintiffs have not disputed this assertion. Thereafter, in March of 2001, almost eight years after the accident and four years and seven months after the settlement, Plaintiffs, for the first time, made a claim for UIM coverage. As stated previously, by delaying until March of 2001 to make notice of a claim for UIM coverage and releasing the tortfeasor, Earth Wood, Grange contends that Plaintiffs have harmed Grange's ability to protect its rights of subrogation. Plaintiffs argue that Grange was given prompt notice of the accident and the underlying suit being brought against the tortfeasor. The Court finds that notice of the underlying suit for purposes of property damage and medical payments is not notice that Plaintiffs intend to pursue a claim for UIM coverage and, therefore, is a breach of Plaintiffs' duties under the contract. This is particularly true in this case where Plaintiffs did not pursue the UIM claim against Grange until over 4-1/2 years after Plaintiffs settled with the tortfeasor and 8 years after the underlying accident. Plaintiffs' failure to notify Grange of their intent to claim UIM coverage at the time of the settlement prevents Grange from protecting its right of subrogation as to the UIM claim as it had done relative to the property damage and medical payment claims."
 {¶ 45} We, however, disagree. As is stated above, the Grange policy required appellants to promptly notify Grange of how, when and where the accident occurred and of the names and addresses of any injured persons and of any witnesses and to cooperate with Grange in any investigation or settlement and promptly send Grange copies of any legal papers, etc. There is no doubt that appellants complied with all of these duties. Appellants notified Grange of the accident shortly after it occurred and, in fact, Grange paid appellant Karen Rogers' claim for medical payments coverage and property damage for losses arising from the accident. In addition, Grange was notified of the potential settlement with the tortfeasor and participated in the same. While appellee Grange now argues that appellants violated the above quoted provisions in the insurance policy by failing to promptly notify appellee of their intent to assert an UIM claim, we concur with appellants that "[t]he policy language clearly requires `Notice of an Occurrence, but does not provide any requirements with respect to `Notice of claims.'" In short, the policy did not require an insured to give notice of a UIM claim, but rather to give notice of an occurrence.
 {¶ 46} Appellee, in support of its argument that appellants breached the terms of the insurance policy, cite to the arbitration provision in the Grange policy. Such provision states as follows:
 {¶ 47} "A. If we and an insured do not agree:
 {¶ 48} "1. Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle; or
 {¶ 49} "2. As to the amount of damages:
 {¶ 50} "either party may make a written demand for arbitration. Such demand for arbitration must be made within 2 years (TWO YEARS) from the date of the accident." (Emphasis added.)
 {¶ 51} Appellee specifically contends that appellants violated this provision by bringing their UIM claim eight years after the accident rather than two years from the date of the accident.
 {¶ 52} The court in Grange Mut. Cas. Co. v. Smock, Geauga App. No. 2000-G-2293, 2001-Ohio-4335 interpreted a similar arbitration provision. The provision in Smock provided that "Any demand for arbitration must be made within 2 years (TWO YEARS) from the date of the `accident' . The provision in Smock
further provided as follows:" "ARBITRATION
 {¶ 53} "a. If we and an `insured' disagree whether the insured' is legally entitled to recover damages from the owner or driver of an `uninsured motor vehicle' or do not agree as to the amount of damages that are recoverable by that `insured', then the matter may be arbitrated * * * Either party may make a demand for arbitration." (Emphasis added.)
 {¶ 54} In holding that the above arbitration provision did not bar the insured from bringing her UIM claim against the insurer, the court in Smock stated as follows: "[a] thorough review of the policy has not revealed any provision in the policy that requires an insured to arbitrate a claim for underinsured motorist coverage or that specifically requires the insured to bring a claim for underinsured motorist coverage within two years of the date of the accident. Construing this arbitration provision strictly against the insurer, Grange, leads us to the conclusion that, while appellant was barred from demanding arbitration of her underinsured motorist claims, she was not barred by the two-year provision from bringing her claim against appellee."
 {¶ 55} Likewise, in the case sub judice, we find that, as the trial court noted, the two year arbitration provision in the Grange policy is permissive and is not mandatory. Appellants, therefore, were not required to arbitrate their claim for UIM benefits. Thus, pursuant to Smock, supra., while appellants may be barred from demanding arbitration of their UIM claim, they are not barred from bringing their UIM claim against appellee.
 {¶ 56} Appellants' sole assignment of error is, therefore, sustained.
 {¶ 57} Accordingly, the judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.
Gwin, P.J. and Farmer, J. concur.