OPINION.
{¶ 1} Plaintiff-appellant Levi Hammock appeals the trial court's entry of summary judgment in favor of defendant-appellee Cincinnati Insurance Company ("CIC") in a declaratory-judgment action. For the following reasons, we reverse and remand for further proceedings.
 {¶ 2} On September 29, 1991, Hammock, while pushing his disabled automobile, was involved in an automobile accident caused by the negligence of Roseann Calo, who was intoxicated. Hammock suffered serious injuries. He sued Calo and Jessa, Inc., and Glen P. Schmidt d/b/a/ Holly Lanes, the owners of the bowling alley where Calo had been drinking prior to the accident. In December of 1996, Hammock settled with Calo and her insurer, Hamilton Mutual Insurance Company, for $15,000, Calo's automobile policy's liability limit. The owners of the bowling alley were uninsured, but Hammock entered into a Release and Indemnification Agreement with them in exchange for $10,000.
 {¶ 3} At the time of the accident, Hammock was employed by Showcase Rent-To-Own ("Showcase"), which was insured pursuant to a commercial auto policy and a commercial general liability policy issued by CIC. The commercial auto policy ("CA policy") provided liability and uninsured/underinsured motorist ("UIM") coverage in the amount of $500,000. The commercial general liability policy ("CGL policy") provided coverage in the amount of $1,000,000.
 {¶ 4} Hammock did not provide notice of the accident or the settlement agreement with the tortfeasors to CIC until March 10, 2001. Subsequently, in June 2001, Hammock filed a suit seeking a declaration that he was entitled to UIM benefits under both the CA and the CGL policies, pursuant to the Ohio Supreme Court's decision in Scott-Pontzerv. Liberty Mut. Ins. Co.[1] Both CIC and Hammock moved for summary judgment. The trial court granted summary judgment in favor of CIC. With respect to the CA policy, the trial court held that UIM coverage was precluded because Hammock was not operating a covered auto at the time of the accident and because he had breached the prompt-notice and subrogation-related provisions of the policy. The trial court held that UIM coverage was precluded under the CGL policy because Hammock was not an insured.
 {¶ 5} In this appeal, Hammock now asserts four assignments of error.
 {¶ 6} An appellate court reviews a trial court's decision on a motion for summary judgment de novo.[2] Summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.[3] We apply this standard to each assignment of error.
 {¶ 7} In his first assignment of error, Hammock alleges that the trial court erred in granting summary judgment in favor of CIC with respect to the CA policy. Before addressing Hammock's argument under this assignment, we observe that CIC has not contested the underlying assumption by the trial court that Hammock was an insured under the CA policy pursuant to Scott-Pontzer. We briefly address this issue for background purposes.
 {¶ 8} In Scott-Pontzer, the Ohio Supreme Court determined that, under certain circumstances, "you," when defined as the "named insured shown in the declarations" in an auto insurance policy, was ambiguous. It concluded that when the named insured was a corporation and no individuals were listed as named insureds, the term "you" necessarily referred to employees of the corporation because "a corporation can act only through live persons."[4] Because the CA policy in this case used the same language from Scott-Pontzer to define insureds for UIM coverage, we conclude that employees of Showcase and, thus, Hammock were insured under the CA policy.
 {¶ 9} Because Hammock was an insured under the CA policy, we now determine whether the trial court properly granted summary judgment to CIC on the basis that the policy had only provided coverage for automobiles owned by Showcase. Hammock argues that the controlling law on this issue is set forth in Martin v. Midwestern Group Ins. Co.[5] We agree.
 {¶ 10} In Martin, the Ohio Supreme Court held that "[a]n automobile liability insurance policy provision which eliminates uninsured motorist coverage for persons insured thereunder who are injured while occupying a motor vehicle owned by an insured, but not specifically listed in the policy, violates R.C. 3937.18 and is therefore invalid."[6] In reaching this holding, the court, citing R.C.3937.18(A)(1), which provides that uninsured-motorist coverage is "for the protection of persons," explained that because the General Assembly had designed uninsured-motorist coverage to protect persons and not vehicles, an insurer could not eliminate UIM coverage on the basis that the injury suffered by the insured occurred when the insured was operating a vehicle not identified in the policy under which the claim was made.[7]
 {¶ 11} R.C. 3937.18 governs UIM coverage. The version of R.C.3937.18 addressed in Martin mandated UIM coverage if "(1) the claimant is an insured under a policy which provides uninsured motorist coverage; (2) the claimant was injured by an uninsured motorist; and (3) the claim is recognized by Ohio tort law."[8]
 {¶ 12} A review of the record demonstrates that Hammock was an insured under the CA policy pursuant to Scott-Pontzer and was injured by an underinsured motorist. Additionally, Hammock's claim of negligence against Calo was a recognized tort under Ohio law. Accordingly, the CA policy entitled Hammock to UIM coverage under the law of Martin.
 {¶ 13} Effective September 3, 1997, the holding in Martin was superceded by amendments to R.C. 3937.18. Am.Sub.H.B. No. 261 amended R.C. 3937.18 by specifically allowing an insurer to include terms and conditions that preclude coverage when an insured is operating or occupying a motor vehicle owned by a named insured but not specifically identified in the policy.[9]
 {¶ 14} CIC argues that its policy properly limited UIM coverage to "covered" autos (autos owned by Showcase) and cites this court's decision in Weyda v. Pacifica Employer's Ins. Co.,[10] for the proposition that it is permissible for insurers to limit UIM coverage by "a narrowing of the universe of vehicles" to be covered.[11] But our decision in Weyda
was based on the version of R.C. 3937.18 that had been amended by H.B. No. 261. The decision in Martin was based on the pre-H.B. No. 261 version of R.C. 3937.18. Accordingly, Weyda is not applicable here.
 {¶ 15} CIC maintains that Martin held that an other-owned-vehicle exclusion was invalid, not the "covered auto" language such as that in the CIC policy. But we note that Martin did not limit its holding to just that particular exclusion. Instead, the Martin court held that anyprovision that limited UIM coverage to an insured based on the car that the insured was operating or occupying was invalid pursuant to the R.C.3937.18. In this case, at the top of the UIM coverage form in the CA policy appeared the following language: "for a covered `auto' licensed or principally garaged in * * * Ohio, this endorsement modifies insurance provided under the following: Business Auto Coverage Form." While this language did not qualify as an exclusion, it was a provision in the policy that limited coverage based on what vehicle an insured was operating at the time of the accident.
 {¶ 16} When a court interprets an automobile insurance contract, the statutory law in effect at the time the contract was formed controls the rights and duties of the contracting parties.[12] Here, the CA policy was effective from February 24, 1991, until it was canceled on May 4, 1992. The pre-H.B. No. 261 version of R.C. 3927.18 was in effect at that time. As the Martin court interpreted the pre-H.B. No. 261 version of R.C. 3937.18, the law set forth there applies to this case.
 {¶ 17} As we have already discussed, Martin prohibits any provision limiting UIM coverage based on what car the insured was occupying or operating at the time of the accident. Applying Martin, we hold that Hammock was entitled to UIM coverage under the CA policy, regardless of what car he was driving. Because the trial court erred in failing to apply Martin to this case, the first assignment of error is sustained.[13]
 {¶ 18} In his second assignment of error, Hammock contests the trial court's holding that he was not an insured under the CGL policy. Hammock maintains that he qualified as an insured under the definition contained in the "Bodily Injury and Property Damage Liability" coverage section. CIC responds that it is irrelevant whether Hammock was considered an insured under the CGL policy because the policy did not provide UIM coverage.
 {¶ 19} When CIC and Showcase entered the insurance contract, R.C.3937.18 required insurers to offer UIM coverage whenever an automobile liability or motor vehicle liability policy of insurance was issued. If underinsured-motorist coverage was not offered, it became part of the policy by operation of law.[14] It is undisputed here that the CGL policy did not offer UIM coverage. CIC argues that it was not required to offer that coverage because the CGL policy was not a motor vehicle policy. We disagree.
 {¶ 20} Again, we note that the statutory law in effect at the time of the formation of an insurance contract controls the rights and duties of the contracting parties.[15] Accordingly, the pre-H.B. No. 261 version of R.C. 3937.18 and the case law interpreting that statute control the outcome of the issues in this case.
 {¶ 21} In Selander v. Erie Ins. Group,[16] the Ohio Supreme Court held that "[w]here motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided."[17] Selander involved a general business liability policy, which generally excluded coverage for claims arising out of the use of motor vehicles. But the policy expressly provided limited coverage for those claims arising out of the use of hired or non-owned automobiles used in the insured's business. The Ohio Supreme Court concluded that because the policy provided liability coverage for non-owned and hired motor vehicles, it was an automobile or motor-vehicle-liability policy of insurance.[18]
 {¶ 22} Like the policy in Selander, the CGL policy in this case was a general business liability policy that generally excluded coverage for claims arising out of the use of motor vehicles, but did provide liability coverage for hired and non-owned automobiles used in the insured's business. Thus, because the CGL policy did offer limited coverage for hired and non-owned automobiles, we hold that it was a motor vehicle policy and, therefore, that UIM coverage arose by operation of law.[19]
 {¶ 23} Having determined that UIM coverage arose by operation of law, we now address whether Hammock was an insured under the CGL policy. Relying on our decision in Roper v. State Auto. Mut. Ins.,[20] we hold that, as an employee of Showcase, Hammock was an insured under the CGL policy.
 {¶ 24} In Roper, an employee sought UIM coverage that had arisen by operation of law under his employer's umbrella policy. Because UIM coverage had been implied by law, there was no endorsement defining an insured for purposes of UIM coverage. Although there were definitions of who qualified as an insured under the liability section of the umbrella policy, we concluded that those bargained-for definitions did not apply to the UIM coverage that had arisen by operation of law.[21] We based our conclusion on Scott-Pontzer, where the Ohio Supreme Court held that any restrictions included in the policy with respect to liability coverage do not apply where coverage arises by operation of law.[22] The umbrella policy at issue in Scott-Pontzer, like the policy in Roper, defined who was an insured under the excess liability coverage but not for the purposes of the UIM coverage that had arisen by operation of law.
 {¶ 25} Our decision in Roper is controlling here. Like the policy in Roper, the CGL policy was an excess liability policy that provided UIM coverage by operation of law, but did not contain a definition of who qualified as an insured with respect to that coverage. The CGL policy, with respect to the bodily-injury-liability coverage, defined an insured as "any employee of the named insured while acting within the scope of their duties." The non-owned and hired-automobile coverage defined an insured as "1. the named insured; 2. any partner or executive officer of the named insured."
 {¶ 26} Applying Roper, we hold that the bargained-for definition under the bodily-injury-liability section, which restricted coverage to an employee who was acting within the scope of his employment, did not apply to the UIM coverage here. Further, the definition under the non-owned and hired-automobile coverage form did not apply strictly in accordance with its terms, because the "named insured" referred only to Hammock's employer, a corporation. The Scott-Pontzer court held that when the "named insured" is a corporation, UIM coverage provided by operation of law makes no sense unless such coverage extends to employees regardless of whether they are acting within the scope of their employment.[23] Accordingly, as an employee of Showcase, the named insured, Hammock was covered under the CGL policy.[24] The second assignment of error is sustained.
 {¶ 27} In his third assignment of error, Hammock asserts that the trial court erred in holding that if Hammock was covered under the CGL policy, his claim for UIM benefits was barred by the statute of limitations. We agree. Pursuant to R.C. 2305.06, an action on a contract is subject to a fifteen-year statute of limitations. R.C. 2305.06 governs claims for UIM benefits.[25] The record demonstrates that Hammock filed his claim for UIM benefits within the fifteen-year period.
 {¶ 28} CIC argues that because the UIM coverage arose by operation of law, a six-year statute of limitations applied to this case pursuant to R.C. 2305.07. R.C. 2305.07 states that "an action upon a contract not in writing, express or implied * * * shall be brought within six years after the cause thereof accrued." We cannot find any case law that has applied this statute to a claim for underinsured-motorist benefits. Most of the cases applying this statute are cases involving oral contracts for payment of services. Because the UIM coverage here was contingent upon the existence of the underlying insurance contract, we hold that R.C. 2305.06
was applicable. If there had not been an underlying written insurance contract, the UIM coverage would have never arisen. The third assignment of error is sustained.
 {¶ 29} In his fourth and final assignment of error, Hammock asserts that the trial court erred in finding that Hammock's failure to provide prompt notice of the accident and settlement agreements to CIC precluded coverage under both insurance policies. CIC argues that Hammock's nine-year delay in notifying it of his claim breached the notice and subrogation provisions contained in each policy and thereby prejudiced CIC by preventing it from conducting a meaningful investigation into the accident and protecting its rights to recover from the tortfeasor.
 {¶ 30} Under the "BUSINESS AUTO COVERAGE FORM, LOSS CONDITIONS" section of the CA policy, the following language appeared: "a. [i]n the event of an `accident,' claim, `suit' or `loss,' you must give us or our authorized representative prompt notice of the `accident' or `loss' * * *. No one may bring a legal action against us under this coverage until: a. There has been full compliance with all the terms of this Coverage Form." The CA policy also contained a subrogation provision that read in part, "[A]ny person or organization to or for whom we may make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us * * *." In the UIM coverage form of the CA policy, it stated that "this insurance does not apply to: 1. Any claim settled without our consent. * * * Promptly send us copies of the legal papers if a suit is brought."
 {¶ 31} The CGL policy also contained notice and subrogation provisions, which read, "[I]n the event of an occurrence, written notice * * * shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable * * *. [N]o action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this policy * * *. [I]n the event of any payment under this policy, the Company shall be subrogated to all of the insured's rights of recovery * * *."
 {¶ 32} As a preliminary matter, we note that, because the foregoing provisions constituted "conditions" of coverage rather than exclusions, they applied to the UIM coverage that arose by operation of law under the CGL policy.[26]
 {¶ 33} When deciding whether the notice and subrogation clauses in the CA policy had been breached, the trial court determined that the nine-year delay in providing notice was unreasonable and prejudicial to CIC as a matter of law. But the court went on to explain that even if the failure to provide prompt notice was only presumed prejudicial, Hammock did not present any evidence to rebut that presumption. The court also held that Hammock had breached the subrogation provisions and that the breach was prejudicial to CIC.
 {¶ 34} After the trial court rendered its decision, the Ohio Supreme Court released a decision addressing the issues presented in this assignment of error. In Ferrando v. Auto-Owners Mut. Ins. Co.,[27] the court set forth a two-part test for evaluating whether prompt-notice and consent-to-settle (or other subrogation-related) provisions have been breached. "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice `within a reasonable time in light of all the surrounding circumstances.' If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut.
 {¶ 35} "In cases involving the alleged breach of a consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. If it was not, the inquiry is at an end, and UIM coverage must be provided * * *. If the consent-to-settle or other subrogation-related clause was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut."[28]
 {¶ 36} Here, the record demonstrates that the prompt-notice and subrogation provisions in both policies were breached. Hammock's accident took place on September 29, 1991. Hammock provided CIC with notice of the accident and his intent to seek coverage under the insurance policies more than nine years after the accident had occurred and five years after he had settled with and released the tortfeasor and her insurer from liability, without the consent of CIC. Hammock asserts that this delay was reasonable because he could not have filed a claim against CIC until after the Ohio Supreme Court had decided Scott-Pontzer. We disagree with Hammock's reasoning. Waiting for a favorable court decision did not constitute a reasonable excuse for his delay in notifying CIC of the accident and settlement agreements.[29] Accordingly, we hold that the trial court properly found that the notice and subrogation provisions had been breached.
 {¶ 37} Under Ferrando, the next task, after determining that the consent-to-settle and prompt-notice provisions have been breached, is to ascertain whether the insurer was prejudiced by those breaches.[30]
Generally, with respect to the prompt-notice provision, whether the insurer has been prejudiced centers on whether the insurer was denied a meaningful opportunity to investigate the accident.[31] With respect to the subrogation-related provisions, the Ferrando court noted that "most of the focus in the prejudice inquiry is on whether the tortfeasor had enough assets beyond the limits of his or her liability insurance that the failure of the insured to obtain the consent of the insurer prior to the settlement and release of the tortfeasor destroyed the insurer's ability to recover additional damages from the tortfeasor."[32] Under both the prompt-notice and the subrogation-related provisions, the burden is on the insured to show that there was no prejudice.[33] If there was prejudice, then coverage is precluded.
 {¶ 38} Prior to Ferrando, there was some authority in Ohio suggesting that before the breach of a prompt-notice provision could preclude coverage, there would have to be a showing of prejudice.[34]
But it was not evident on which party the burden fell to show prejudice or the lack thereof. With respect to subrogation-related provisions, the law in Ohio prior to Ferrando was that a breach of any such provision was per se prejudicial.[35] Because the Ferrando court changed and/or clarified the law in this area, we must remand this cause to the trial court for further consideration of whether CIC was prejudiced by Hammock's breach of the prompt-notice and the subrogation-related provisions in both policies. While we recognize that there was some brief discussion of prejudice from the breach of the prompt-notice provision in the memoranda submitted in support of and against CIC's summary-judgment motion, we note that there was not an inquiry by the court into the issue of prejudice as contemplated by Ferrando.
 {¶ 39} Accordingly, because there remains an unaddressed genuine issue of material fact with respect to whether CIC was prejudiced by Hammock's breach of the prompt-notice and subrogation-related provisions in both the CA and the CGL policies, we hold that the trial court erred in granting summary judgment in favor of CIC. The fourth assignment of error is sustained.
 {¶ 40} In sum, we reverse the judgment of the trial court and remand this case for further proceedings consistent with the law and this decision.
Judgment reversed and cause remanded.
Doan, P.J., and Painter, J., concur.
[1] 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116.
[2] Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 1996-Ohio-336,671 N.E.2d 241.
[3] Id.; See, also, Civ.R. 56(C).
[4] Scott-Pontzer, supra, at 664, 1999-Ohio-292, 710 N.E.2d 116.
[5] (1994), 70 Ohio St.3d 478, 639 N.E.2d 438.
[6] Id. at paragraph three of the syllabus.
[7] Id. at 480-482, 639 N.E.2d 438.
[8] Id. at 481, 639 N.E.2d 438.
[9] See Kyle v. Buckeye Union Ins. Co., 6th Dist. No. L-02-1166, 2003-Ohio-488, ¶ 12, fn. 2.
[10] 151 Ohio App.3d 678, 2003-Ohio-443, 785 N.E.2d 763.
[11] Id.
[12] Ross v. Farmers Ins. Group, 82 Ohio St.3d 281, 1998-Ohio-381,695 N.E.2d 732, syllabus.
[13] In the trial court's decision, it cited Estate of Houser v.Motorists Ins. Co., 3rd Dist. No. 2-02-02, 2002-Ohio-2845, to support its holding. But we note that in Houser the post-H.B. No. 261 version of R.C. 3937.18 governed the case and that the language of who was an insured under the underinsured-motorist endorsement was different than the language in the CA policy at issue here. In Houser, the definition of who was an insured specifically included the following: "C. Your employees while occupying a covered `auto' * * *." Id. at ¶ 18. There was no such language in CIC's CA policy. Accordingly, we conclude that Houser is not applicable here.
[14] Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161,258 N.E.2d 429, paragraphs one and two of the syllabus.
[15] See Ross, supra.
[16] (1999), 85 Ohio St.3d 541, 709 N.E.2d 1161.
[17] Id. at 544, 709 N.E.2d 1161.
[18] Id.
[19] Abate, supra.
[20] 1st Dist. No. C-010117, 2002-Ohio-3283.
[21] Id. at ¶ 31.
[22] Id. at ¶ 32, citing Scott-Pontzer, supra, at 665-666.
[23] Scott-Pontzer, supra, at 664, 1999-Ohio-292, 710 N.E.2d 1116.
[24] See Roper, supra, at ¶¶ 31-32; Scott-Pontzer, supra, at 666;Hartfield v. Toys `R' Us, 6th Dist. Nos. L-02-1218 and L-02-1228, 3003-Ohio-2905, at ¶ 40; Greene v. Westfield Ins. Co., 5th Dist. No. 2002CA00114, 2002-Ohio-6179, at ¶ 26.
[25] Lane v. Grange Mut. Cos. (1989), 45 Ohio St.3d 63, 64,543 N.E.2d 488.
[26] Heiney v. The Hartford, 10th Dist. No. 01AP-1100, 2002-Ohio-3718, ¶¶ 29-35, reversed on other grounds, 99 Ohio St.3d 1519,2003-Ohio-4115, 792 N.E.2d 1134; Ohio State Grange Mut. Ins. Co. v.Shimandle (1994), 11th Dist. No. 94 L-032.
[27] 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927.
[28] Id. at ¶¶ 90-91.
[29] Kearney v. Valsi Cleaners, 9th Dist. No. 02CA0111-M, 2003-Ohio-3506, at ¶ 9, citing Wheeler v. Western Res. Mut. Cas.Co., 9th Dist. No. 02CA0043, 2003-Ohio-1806, at ¶ 20 (concluding that delay was unreasonable where insured provided notice to insurer "more than four years * * * since the accident; * * * and two years had passed since the Supreme Court decided Scott-Pontzer").
[30] Ferrando, supra, at ¶¶ 90-91.
[31] See id. at ¶ 77.
[32] Id. at ¶ 46.
[33] Id. at ¶¶ 90-91.
[34] See Ruby v. Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159,161, 532 N.E.2d 730.
[35] See Ferrando, supra, at ¶ 62, citing Bogan v. ProgressiveCas. Ins. Co. (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, overruled by Ferrando, supra.