OPINION
{¶ 1} Mark R. Nottingham and his parents, Mark A. Nottingham and Rebecca Nottingham, appeal from the trial court's entry of summary judgment in favor of appellees Erie Insurance Company ("Erie") and Travelers Insurance Company ("Travelers") on their complaint seeking underinsured motorist ("UIM") benefits.
 {¶ 2} In two assignments of error, the Nottinghams contend the trial court erroneously entered summary judgment against them on December 30, 2002, without considering Ferrando v. Auto-Owners Mut. Ins. Co.,98 Ohio St.3d 186, 2002-Ohio-7217, which the Ohio Supreme Court had decided on December 27, 2002. Upon review, we conclude that the Ohio Supreme Court's decision in Ferrando does not require a reversal in this case. The record supports the entry of summary judgment in favor of Erie and Travelers based on both Ferrando and prior case law that Ferrando did not alter. Accordingly, we overrule both assignments of error and affirm the entry of summary judgment against the Nottinghams.
 I. {¶ 3} The record reflects that Mark R. Nottingham was involved in a one-car automobile accident on March 20, 1997. The accident occurred when Mark, then age thirteen, was riding in the rear seat of a vehicle driven by fifteen-year-old Eric Brown. While speeding on a Darke County road, Brown lost control of the vehicle, which entered a ditch, hit a cement post, and rolled. Mark was ejected from the car, and he suffered burns when it landed on him. Following the accident, Mark settled with Brown's automobile insurance carrier for the policy limit of $25,000, which was insufficient to compensate him fully for his injuries, and released Brown and his insurers from additional liability on March 10, 1998. The Darke County Probate Court approved the settlement and release on June 1, 1998.
 {¶ 4} At the time of the accident, Mark resided with his parents, Mark A. Nottingham and Rebecca Nottingham. Mark's father was employed by St. Henry Tile Company, which maintained a commercial automobile policy issued by Erie. Mark's mother was employed by Huffy Corporation, which maintained a commercial automobile policy issued by Travelers.
 {¶ 5} More than one year after Mark settled his claim with Brown's insurance carrier, the Ohio Supreme Court decided Scott-Pontzer v.Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292. Approximately nineteen months later in January, 2001, the Nottinghams notified Erie of a UIM claim under the policy issued to St. Henry Tile Company. Likewise, in January, 2001, they notified Travelers of a UIM claim under the policy issued to Huffy Corporation. The Nottinghams subsequently filed their complaint in this action on March 13, 2002, alleging that they qualify as insureds under the two policies and seeking UIM benefits pursuant to Scott-Pontzer.[1]
 {¶ 6} Erie and Travelers later filed motions for summary judgment. In separate December 30, 2002, decisions, the trial court sustained both motions. In so doing, the trial court found UIM coverage under the Erie and Travelers policies by operation of law, and found that the Nottinghams qualified as "insureds" under the policies. The trial court also addressed two distinct "notice" issues. First, the trial court rejected the insurance companies' argument that summary judgment was appropriate because the Nottinghams had failed to provide prompt notice of their claims as required by the two policies, thereby prejudicing Erie and Travelers. According to the trial court, genuine issues of material fact existed as to (1) whether the Nottinghams provided prompt notice under the circumstances and (2) whether the insurance companies were prejudiced by any lack of prompt notice. In reaching this conclusion, the trial court stated that it could not presume prejudice even if the Nottinghams had breached the prompt-notice provisions of the two policies. Second, with regard to the settlement and release of Mark's claim against Eric Brown, the trial court reached a different conclusion. The trial court found that the Nottinghams had breached certain conditions of the Erie and Travelers policies that required them not to prejudice the insurance companies' subrogation rights. In particular, the trial court noted that Mark had entered into the settlement and release without either insurance company's knowledge in violation of the terms of the two policies, thereby causing actual prejudice to Erie and Travelers as a matter of law. In light of this determination, the trial court concluded that the Nottinghams were not entitled to UIM coverage. This timely appeal followed.
 II. {¶ 7} The Nottinghams raise only one issue in their two assignments of error, namely whether the trial court's entry of summary judgment in favor of Erie and Travelers must be reversed in light ofFerrando, supra, which the Ohio Supreme Court decided three days before the trial court entered its judgments. In addition, Erie and Travelers both defend the trial court's entry of summary judgment on alternative grounds upon which it did not rely in entering summary judgment. See App.R. 3(C)(1).
 {¶ 8} The crux of the Nottinghams' argument is that the trial court erred in finding actual prejudice to Erie and Travelers as a result of a breach of the subrogation-related provisions of the insurance policies. The Nottinghams insist that under Ferrando, a breach of consent-to-settle or other subrogation-related provisions of an insurance policy is presumed prejudicial, but the presumption is rebuttable and may be overcome with evidence to the contrary. According to the Nottinghams, the trial court treated their breach of the subrogation-related provisions of the Erie and Travelers polices as per se prejudicial and did not afford them an opportunity to demonstrate otherwise.
 {¶ 9} Erie and Travelers dispute the foregoing argument, and they also take issue with the trial court's resolution of the other "notice" issue in this case. In particular, they contend (1) the Nottinghams breached the prompt notice-of-claim provisions of the insurance policies as a matter of law, and (2) contrary to the trial court's finding, such a breach is presumed prejudicial. Given the Nottinghams' failure to cite any evidence to rebut the presumption, Erie and Travelers contend that they were entitled to summary judgment for this alternative reason, which the trial court rejected.[2]
 {¶ 10} Upon review, we find both of the foregoing arguments to be persuasive. In Ferrando, the Ohio Supreme Court discussed at length the proper analytical framework when an insurance company seeks to avoid coverage based on an insured's breach of either subrogation-related or prompt notice-of-claim provisions in an automobile insurance policy. In so doing, the Ferrando court remedied an inconsistency in the treatment of the two types of breaches. With regard to consent-to-settle and other subrogation-related provisions, the Ferrando court noted that precedent such as Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, had treated a breach of these provisions as per se prejudicial to an insurer in all cases as a matter of law. On the other hand, the Ferrando court noted that precedent such as Ruby v. Midwestern Indem. Co. (1988),40 Ohio St.3d 159, had treated a breach of a prompt notice-of-claim provision as being presumptively prejudicial to an insurer, with the insured bearing the burden of presenting evidence to overcome the presumption. In the Ohio Supreme Court's view, this inconsistent treatment of the two types of breaches was illogical. As a result, the Ferrando
court reaffirmed Ruby, insofar as it held that a breach of a prompt notice-of-claim provision creates a rebuttable presumption of prejudice. With regard to the breach of consent-to-settle or other subrogation-related provisions, the Ferrando court overruled Bogan, insofar as it suggested that an insurer is per se prejudiced whenever an insured breaches a consent-to-settle or other subrogation-related provision of an insurance policy. According to the Ferrando court, the same standard applies to alleged breaches of either subrogation-related or prompt notice-of-claim provisions in an automobile insurance policy. In either case, a rebuttable presumption of prejudice arises, and an insured bears the burden of establishing a lack of prejudice to the insurance company. See generally Ferrando, supra, at 202-207.
 {¶ 11} Finally, the Ferrando court summarized its analysis by setting forth a two-step inquiry for evaluating the alleged breaches discussed above. The first step is to determine whether a breach of the provision at issue occurred. If not, the inquiry is at an end. If a breach did occur, however, the second step is to determine whether the insurer was prejudiced so that UIM coverage must be forfeited. With regard to this issue, a breach of the relevant provision results in a presumption of prejudice, which the insured bears the burden to overcome. Id. at 208. As applied to an alleged breach of a prompt notice-of-claim provision, this two-step inquiry articulated by the Ferrando court in essence constituted nothing more than a restatement and reaffirmation of precedent such as Ruby, supra. As it related to an alleged breach of a consent-to-settle or other subrogation-related provision, however, this two-part test constituted a departure from prior case law such as Bogan, supra, which indicated that the breach was per se prejudicial in all cases.
 {¶ 12} In the present case, the trial court erroneously relied on pre-Ferrando case law and held that the Nottinghams' breach of the subrogation-related provisions of the Erie and Travelers polices caused "actual prejudice" to the insurance companies as a matter of law. In so doing, the trial court appears to have found that the breach was per se prejudicial rather than merely presumptively prejudicial. Although the trial court's reasoning is consistent with cases such as Bogan, supra, it is inconsistent with Ferrando, which the Ohio Supreme Court decided three days before the trial court entered summary judgment. Consequently, we agree with the Nottinghams that the trial court erred in entering summary judgment on the basis of a breach of the subrogation-related provisions of the Erie and Travelers policies.
 {¶ 13} Because Erie and Travelers raise other issues in defense of the trial court's summary judgment rulings, the foregoing conclusion does not complete our analysis. As noted above, Erie and Travelers contend the trial court erred in failing to find an unreasonable delay by the Nottinghams' when giving notice of their UIM claims and in failing to find a presumption of prejudice as a result of the delay. Upon review, we conclude, based on both Ferrando and prior case law unaltered byFerrando, that the Nottinghams did breach the prompt notice-of-claim provisions of the Erie and Travelers policies as a matter of law, that the breach was presumptively prejudicial, and that the Nottinghams did not even seek to rebut the presumption.
 {¶ 14} In its December 30, 2002, summary judgment rulings, the trial court found a genuine issue of material fact as to whether the Nottinghams' substantial delay in giving notice of their UIM claims against Erie and Travelers was unreasonable. In reaching this conclusion, the trial court determined that the Ohio Supreme Court's ruling in Scott-Pontzer constituted a change in the law. The trial court then found that reasonable minds could disagree about whether the Nottinghams were required to give notice of a UIM claim prior to the decision in Scott-Pontzer, given that no theory of recovery existed before that time. With regard to the additional delay in providing notice to Erie and Travelers even after the decision in Scott-Pontzer, the trial court declined to find that such a delay was unreasonable as a matter of law.
 {¶ 15} We disagree with the trial court's analysis of the delay issue. Prompt-notice provisions require that notice be given to the insurer "within a reasonable time in light of all the surrounding facts and circumstances." Ruby, supra, at syllabus. This court and other Ohio appellate courts have rejected the proposition that a delay in giving notice of a UIM claim prior to the decision in Scott-Pontzer is reasonable. See, e.g., Wodrich v. Federal Ins. Co., Greene App. No. 02CA3, 2002-Ohio-5122 ("It is no doubt true that the Wodriches were unaware of the subsequent decision in Scott-Pontzer when they settled with the tortfeasor, but that does not foreclose the possibility that the Wodriches might have sought UM/UIM coverage under these policies, as the plaintiff in Scott-Pontzer did."); Erdmann v. Kobacher Co, Lucas App. No. L-02-1184, 2003-Ohio-5677 ("Awaiting a new or favorable decision by the Supreme Court of Ohio has been determined not to excuse a lengthy delay in giving notice of a claim under an insurance policy."); Hammock v.Cincinnati Ins. Co., Hamilton App. No. C-020783, 2003-Ohio-5090 (same). Furthermore, we note that the Nottinghams delayed notifying Erie and Travelers of their UIM claims for approximately nineteen months after the Ohio Supreme Court decided Scott-Pontzer. In light of this additional delay, and considering all of the surrounding facts and circumstances, we conclude that the Nottinghams unreasonably delayed giving Erie and Travelers notice of their UIM claims as a matter of law. Cf. Wheeler v.W. Res. Mut. Cas. Co., Wayne App. No. 02CA0043, 2003-Ohio-1806 (finding that a two-year delay in giving notice after the Scott-Pontzer decision was unreasonable).
 {¶ 16} We also disagree with the trial court's finding that it could not presume prejudice to Erie and Travelers if the Nottinghams did unreasonably delay giving notice of their UIM claims. In Ferrando, the Ohio Supreme Court quoted with approval its prior decision in Ruby
wherein it reasoned that "`unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary.'"Ferrando, supra, at 202, quoting Ruby, supra, at 161; see also Ferrando, supra, at 205. Thus, long before the Ohio Supreme Court decidedFerrando, the breach of a prompt-notice provision in an insurance contract created a rebuttable presumption of prejudice to the insurer, and the insured bore the burden of presenting evidence to the contrary. The trial court erred in holding otherwise and refusing to presume prejudice to Erie and Travelers.
 {¶ 17} Finally, we note that the Nottinghams did not rebut the presumption of prejudice that arose from their breach of the prompt-notice provisions of the Erie and Travelers policies. In light of the Nottinghams' failure to rebut the presumption of prejudice, as required by both Ferrando and prior case law that Ferrando did not alter, we conclude that summary judgment was appropriately granted, albeit for a reason other than the one upon which the trial court relied.
 III. {¶ 18} Based on the reasoning and citation of authority set forth above, we hereby overrule the Nottinghams' two assignments of error, and affirm the judgment of the Darke County Common Pleas Court although on different grounds than those relied upon by the trial court.
FAIN, P.J. and WOLFF, J., concur.
[1] While Mark seeks compensation for his injuries, his parents appear to seek payment for loss of consortium.
[2] Erie and Travelers are raising this argument in order to support the trial court's judgment on grounds that it rejected. See Erie's Appellate Brief at 5-12; Travelers' Appellate Brief at 4-5. In other words, the insurance companies are using the issue as a shield to protect the trial court's judgment rather than as a sword to destroy or modify the judgment. In this context, Erie and Travelers were not required to file their own notices of appeal. See App.R.3(C)(2); Wright v. MedAmericaInt'l Ins. (Oct. 24, 2003), Montgomery App. No. 19809, n. 9.